UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL NO. 1:12-CV-00967

| | |
|---|---|
| RF MICRO DEVICES, INC., | |
| Plaintiff, | |
| v. | **BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR ORDER OF ATTACHMENT & MOTION FOR EXPEDITED DISCOVERY** |
| JIMMY S. XIANG, XIAOHANG DU, FENG WANG and VANCHIP TECHNOLOGIES LTD., | |
| Defendants. | |

Defendants Jimmy S. Xiang ("Xiang"), Xiaohang Du ("Du"), Feng Wang and Vanchip Technologies Ltd. ("Vanchip") oppose Plaintiff RF Micro Devices, Inc.'s ("RFMD") Ex Parte Motion for Order of Attachment and Motion for Expedited Discovery. In support for their opposition to the motions, Defendants file the Declarations of Jimmy S. Xiang and Xiaohang Du and this brief.

## INTRODUCTION

This case is one of two duplicative, costly and parallel trade secret cases RFMD filed in different jurisdictions (North Carolina and China) against Xiang, Du and others over the same set of facts.[1] Through vague but incendiary allegations which do not specify what RFMD claims has actually been "misappropriated," and by imposing upon the Defendants the burden of litigating in parallel proceedings at once, RFMD is

---

[1] RFMD states that it has a filed a "similar" lawsuit in China against Xiang, Du and "two Chinese corporations the Defendants have formed" as part of their alleged actions. *See* Docket No. [hereinafter "Doc."] 15 ¶ 1.

attempting to suppress competition generally from a much smaller enterprise which designs semiconductor chips, namely power amplifier chips, used in cellphones and introduced its products to the Chinese marketplace over a year ago.

As part of this effort, and despite the facts that (i) RFMD never wrote or raised any issue with Defendants about their alleged activities prior to filing its lawsuits, (ii) approximately two (or more) years have passed since they left RFMD, and (iii) the products complained of have been in the market for over a year, RFMD now urges the Court to take the extraordinary steps of attaching personal bank accounts and houses and of allowing expedited discovery based upon hearsay and unsupported conclusions. The motions should be denied.

Among other reasons set forth below, pre-judgment attachment should be denied since Xiang and Du are North Carolina residents and have subjected themselves to the personal jurisdiction of this Court. Although they have Chinese surnames, they are both naturalized US citizens, hold current North Carolina driver's licenses, have houses in North Carolina and pay North Carolina income tax. In addition, much of the property identified by RFMD for attachment is not properly subject to attachment, and the proposed bond is insufficient. RFMD also has failed to establish sufficient cause for deviating from the normal process of discovery and allowing expedited discovery, particularly since the Defendants have accepted service or have been served.

# STATEMENT OF FACTS[2]

Defendant Jimmy Xiang immigrated to the United States with his family in 1985, when he was 12 years old. Xiang Decl. ¶ 4. He became a United States citizen in 1994, and continues to hold his citizenship. *Id.* ¶¶ 4, 7. Xiang moved to North Carolina in September 1999, at the time of his employment with RFMD. *Id.* ¶ 3; Compl. ¶ 22. He was granted a North Carolina driver's license in 1999, and still holds a valid license today. Xiang Decl. ¶ 5. Together with his wife, Xiang purchased a house in Guilford County on December 6, 2000, which he still owns jointly with his wife. *Id.* ¶¶ 6, 7. Although he travels often and has spent most of his time outside North Carolina in recent years for business, Xiang continues to pay North Carolina income tax and considers the State to be his permanent residence. *Id.* ¶ 7. Xiang is readily available to travel to North Carolina for purposes of this litigation, and submits himself to the personal jurisdiction of this Court. *Id.* ¶¶ 9, 11. Xiang has accepted service of process in this matter. *See* Doc. 21.

Defendant Xiaohang (Sean) Du moved to North Carolina in September 2000, at the time of his employment with RFMD. Du Decl. ¶ 3; Compl. ¶ 23. Du received his green card in April 2006, and applied for citizenship immediately upon eligibility. Du Decl. ¶ 4. Du became a United States citizen last year, in June 2011. *Id.* ¶ 4. Du has held a North Carolina driver's license since April 2004. *Id.* ¶ 5. Du purchased a house in

---

[2] The facts recited herein are taken either from the Declarations of Xiang and Du filed in support hereof, or from RFMD's Complaint. Defendants reserve, and do not waive, their right to contest each of the allegations of RFMD's Complaint.

Guilford County in October 2002, which he still considers his permanent residence. *Id.* ¶¶ 6, 7. Both Du and his wife—who is employed by Volvo North America—continue to pay North Carolina income tax. *Id.* ¶¶ 7, 8. Like Xiang, although Du has spent most of his time outside North Carolina in recent years for business and travels often, he considers this State to be his permanent residence. *Id.* ¶ 7. Also like Xiang, Du is readily available to travel to North Carolina for purposes of this litigation, and submits himself to the personal jurisdiction of this Court. *Id.* ¶¶ 9, 11. He has been served in this case and accepts service in any event. *See* Docs. 20, 21.

It has been years since Defendants Wang, Xiang or Du were employed by RFMD. As RFMD alleges, Wang was laid off from RFMD over four years ago, on or about July 2, 2008, when RFMD exited the transceiver business. Compl. ¶ 37. Xiang and Du resigned nearly two years ago, on or about September 10, 2010. *Id.* ¶ 53.

RFMD alleges that the Vanchip enterprise introduced the first of its three chips in question in August and September 2011 and that Vanchip said it had sold one million units by November 2011. *Id.* ¶ 55.

RFMD did not write Defendants or otherwise inform Defendants that it took issue with any of the activities of the Defendants prior to filing this lawsuit or the case in China.

As noted above, RFMD has sued Xiang, Du and corporate defendants over the same dispute in China. RFMD calls it the China Litigation. *See* Doc. 15 ¶ 1. In the

China Litigation, RFMD reports that it has been granted a seizure order and that approximately $125,000 has been seized from company bank accounts.  *See* Doc. 15 ¶ 2.

**ARGUMENT**

**A. Attachment Against the Assets of Xiang and Du Should Be Denied.**

RFMD moves for the "extraordinary and summary remedy" of prejudgment attachment against Xiang and Du pursuant to N.C. Gen. Stat. § 1-440.1, *et seq.*, exclusively on the grounds that both defendants are purportedly nonresidents of North Carolina.  *See* Doc. 6-1 ¶ 6.[3]  RFMD seeks to attach the assets of Xiang and Du in the amount of up to $10 million (Doc. 5 at Ex. 3), and in return proposes a $10,000 bond (Doc. 6 at 7).

Attachment is inappropriate here.  *First*, Xiang and Du should be considered residents of North Carolina, and have subjected themselves to the personal jurisdiction of this Court.  *Second*, much of the property identified by RFMD is not appropriately subject to attachment.  *Third*, were attachment to issue, the bond proffered by RFMD is insufficient to protect Xiang and Du against the likely harm caused by securing property up to the amount of $10 million.

1. <u>Xiang and Du are Residents of North Carolina</u>

In order for attachment to issue, RFMD must show by affidavit one of the statutory grounds outlined in N.C. Gen. Stat. § 1-440.3.  The only ground identified and relied on by RFMD is its allegation that Xiang and Du are nonresidents.  *See* Doc. 6-1 ¶

---

[3] RFMD has not made any showing under any other grounds provided by the statute.

6. But RFMD's allegation is defective on its face; the only competent evidence in the record is that Xiang and Du are in fact North Carolina residents.

As an initial matter, attachment constitutes an extraordinary remedy, requiring an exacting standard to be met.

> Attachment being an extraordinary and summary remedy in derogation of the common law, the courts will usually . . . construe the statute strictly in favor of those against whom the proceeding is employed, both as to the subject-matter of the attachment and the method of enforcing the remedy, and will exact of the plaintiff a strict compliance with all statutory requirements.

*Carson v. Woodrow*, 160 N.C. 143, 146, 75 S.E. 996, 997 (1912) (quotations omitted). Indeed, "an affidavit made on belief as to the ground of attachment must give the sources of information <u>and recite positive facts reasonably supporting the belief</u>." *Connolly v. Sharpe*, 49 N.C. App. 152, 155, 270 S.E.2d 564, 567 (1980) (emphasis added).

In order to allege that Xiang and Du are nonresidents, RFMD relies on the Affidavit of George W. Rhyne, whose information in turn relies on two sources—neither of which are competent. First, Rhyne notes (but does not attach) that Xiang's and Du's personnel records from RFMD—<u>which are at least two years old</u>—indicate that Xiang and Du are nonresidents. Doc. 6-1 ¶ 6. Second, Rhyne cites to "information" from current RFMD employees, as well as an investigator, regarding residency. *Id.* Each of the sources relied on by Rhyne constitutes little more than incompetent hearsay, and is far short of personal knowledge of the facts. Rhyne's affidavit likewise fails to recite <u>any</u> facts reasonably supporting his belief regarding Defendants' residency. RFMD therefore

fails to meet the strict compliance with the statute required to warrant the extraordinary remedy of attachment.

In fact, Xiang and Du are permanent residents of North Carolina. Both Xiang and Du are United States citizens, both own houses in the State that they consider their permanent residence, both hold valid North Carolina driver's licenses, and both pay North Carolina income taxes. Xiang Decl. ¶¶ 4-7; Du Decl. ¶¶ 4-7. Although Xiang and Du travel frequently for business, and spend much of their time in China, the United States—and North Carolina in particular—is their home. Xiang Decl. ¶ 7; Du Decl. ¶ 7. Importantly, upon learning of this lawsuit, Xiang immediately travelled to North Carolina to deal with the litigation and accept service of process. Xiang Decl. ¶ 9. Likewise, Du was in North Carolina when he learned of the lawsuit and remained here for the same purposes. Du Decl. ¶ 9. Both have accepted service (Doc. 21 ¶¶ 2-4),[4] both are subject to the personal jurisdiction of this Court, and both intend to return to North Carolina as often as necessary. Xiang Decl. ¶ 9; Du Decl. ¶ 9.

The circumstances here establish residency for purposes of the attachment statute. In a North Carolina Supreme Court case from 1927—*Brann v. Hanes*, 194 N.C. 571, 140 S.E. 292 (1927)—the Supreme Court noted the significance of return to the State in light of the pending litigation. In *Brann*, the defendant was a resident of Winston-Salem, but maintained a winter home in New York. *Id.* at 573, 140 S.E. at 293. The defendant was sued while in New York, but could not return at any definite time due to an illness. *Id.* at

---

[4] In addition to accepting service, Du was also served by RFMD's process server. *See* Doc. 20.

574, 140 S.E. at 294. The Supreme Court held the defendant was a nonresident for purposes of attachment, because he was "absent for an indefinite duration of time, with no intention to return within a period reasonably definite." *Id.* at 575, 140 S.E. at 294. Importantly, the Supreme Court held further:

> The best evidence to the contrary would be his return to the State, where summons could be served upon him personally, as upon other residents. . . . If upon the levy of an attachment upon his property, he promptly returns to the State, and thereby subjects himself to personal service of summons, his motion to vacate the attachment upon the ground that he is not a nonresident, would seem generally to be well sustained. . . . Such action on his part would be consistent with his contention that notwithstanding his absence from the State, at the time the summons and warrant of attachment were issued, he is not a nonresident of the State, but is a resident thereof, and as such, subject to personal service of summons as are other residents, whose property is not subject to attachment.

*Id.*; *see also Vinson Realty v. Honig*, 88 N.C. App. 113, 117, 362 S.E.2d 602, 604 (1987) ("This construction is consistent with one of the purposes of attachment of the property of a nonresident, which is to enable the court to gain jurisdiction over one who otherwise is without the boundaries of this State.") (citing *Brann*). In the present case, Xiang and Du maintain permanent homes in the State, consider themselves residents of the State, and have intentionally accepted service and subjected themselves to the personal jurisdiction of this Court. Xiang and Du are appropriately considered residents for purposes of attachment.

## 2. Property Identified By RFMD Is Not Subject to Attachment

Pursuant to N.C. Gen. Stat. § 1-440.4, only property that is subject to levy under execution is also subject to prejudgment attachment. RFMD, however, seeks attachment of property that is not subject to execution.

Perhaps most significantly, RFMD seeks attachment of Xiang's house, which he owns jointly with his wife. "[I]t is well established that an individual creditor of either a husband or a wife <u>has no right to levy upon property</u> held by the couple as tenants by the entirety." *Dealer Supply Co. v. Greene*, 108 N.C. App. 31, 34, 422 S.E.2d 350, 352 (1992) (emphasis added). By statute, any conveyance of real property to a husband and wife is vested in them as tenants by the entirety. *See* N.C. Gen. Stat. § 39-13.6. RFMD does not assert a claim against Xiang's wife. Undeterred, RFMD still seeks attachment of Xiang's and his wife's house—notwithstanding that the conveyance is evident on its face as one made to husband and wife as tenants by the entirety.[5] Attachment upon Xiang's house is improper.

Furthermore, RFMD seeks attachment of Du's bank account, which he holds jointly with his wife. However, joint bank accounts are attachable only to the extent of the defendant's respective contribution to the account—"[t]o hold otherwise would allow seizure of money belonging to an innocent third party." *Jimenez v. Brown*, 131 N.C.

---

[5] Although the Deed conveying the house to Xiang and his wife does not identify them as spouses, the Deed of Trust—the very next instrument in the Register of Deeds— explicitly makes that identification. (Deed of Trust located at Book 5124, Page 1222, Guilford County Register of Deeds.) RFMD's personnel records may also indicate his marital status. Both his marital status and the nature of the ownership of the real property are also confirmed by Xiang's declaration. Xiang Decl. ¶¶ 6-7.

- 9 -

Case 1:12-cv-00967-WO-JEP   Document 22   Filed 09/06/12   Page 9 of 17

App. 818, 825, 509 S.E.2d 241, 246 (1998). Du's bank account therefore should be attachable, if at all, only in proportion to his own contributions, or 70%. *See* Du Decl. ¶ 8.

Most concerning, RFMD also requests a blanket order for attachment, for the U.S. Marshall to attach "all of the property of defendants Xiang and Du within the Middle District which is subject to attachment," up to $10 million. Doc. 5-3 at 2. RFMD neither specifies exclusions nor suggests Xiang and Du should be given an opportunity to exclude property. Before property of a judgment debtor is subject to execution, however, that debtor must be given an opportunity to exempt certain property, including but not limited to life insurance, retirement plans, and college savings. *See* N.C. Gen. Stat. § 1C-1601, *et seq.* RFMD's blanket request for attachment of "all property" burdens Xiang and Du with the unjust risk of execution of property appropriately exempt under North Carolina law. It should not be entertained.

3. RFMD's Proposed Bond Is Inadequate

Perhaps most extraordinarily, RFMD seeks to secure an order of attachment for up to $10 million with a bond of $10,000. *See* Doc. 6-1 at ¶ 7 (Rhyne Aff. ¶ 7). Pursuant to N.C. Gen. Stat. § 1-440.40(a), the bond securing attachment must be in an amount sufficient to "provide adequate protection" to the Defendants. This requirement is most analogous to a preliminary injunction bond, which is intended "to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction." *Hoechst Diafoil v. Nan Ya Plastics*, 174 F.3d 411, 421 n.3 (4th Cir.

1999). Thus, the amount of the bond "ordinarily depends on the gravity of the potential harm to the enjoined party," and should be fixed "'in an amount that covers the potential incidental and consequential costs.'" *Id.* (quoting 11A Charles Alan Wright et al., *Fed. Practice & Procedure* § 2954 at 292 (2d ed. 1995)).

Given that RFMD seeks to attach the Defendants' property up to the amount of $10 million—effectively preventing such property's use as an asset by Defendants—RFMD's proffered bond is plainly insufficient to protect Xiang and Du from the possible and probable harm that would result. Indeed, RFMD states that it has already effectuated the seizure in China of approximately $125,000 from Chinese bank accounts of the "Chinese Vanchip companies." *See* Doc. 15 ¶ 2. Rhyne, of RFMD, avers that Du's house has a tax value of $239,800. *See* Doc. 6-1 ¶ 7. Plaintiff also seeks the attachment of Du's primary bank account. Du Decl. ¶ 8. The potential and consequential costs are substantial. If attachment were to issue in this Court, RFMD's bond should be no less than $300,000, in order to adequately protect the interests of Xiang and Du (and assuming the house owned by Xiang and his wife is deemed not subject to attachment).

### B. Expedited Discovery Should Not Be Allowed.

Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Some district courts, such as the Eastern and Western Districts of North Carolina further state that the Court may authorize expedited discovery upon a showing of good cause, and that

the matter is committed to the sound discretion of the court. *See Carter v. Ozoeneh*, 2009 U.S. Dist. LEXIS 45679 at *6-8 (W.D.N.C. May 14, 2009) (denying motion for expedited discovery); *Dimension Data North America, Inc. v. Butters*, 226 F.R.D. 528, 530-31 (E.D.N.C. 2005) (denying motion for expedited discovery). For example, this Court has allowed limited expedited discovery related to issues raised by a motion for preliminary injunction or TRO. *See, e.g.*, *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp.2d 664, 667-68 (M.D.N.C. 2009); *Arminius Schleifmittel GmbH v. Design Indus., Inc.*, 2006 U.S. Dist. LEXIS 59588, *4-6 (M.D.N.C. Aug. 22, 2006). However, in other cases, requests for expedited discovery have been denied by this Court. *See, e.g.*, *Tripath Imaging, Inc. v. Cytec Corp.*, 2003 U.S. Dist. LEXIS 28278 at *23-25 (M.D.N.C. Oct. 8, 2003) (denying motion for expedited discovery and transferring case to avoid fragmented discovery); *National Ass'n of Assoc. Publishers v. Prince Publishing, Inc.*, 1997 U.S. Dist. LEXIS 8574 at *2 (denying motion for expedited discovery and staying case pending arbitration).

RFMD seeks the production of documents from three ISPs (Google, Yahoo! and AT&T) on seven (to each ISP) wide-reaching document requests generally concerning emails and email account information. *See* Proposed Subpoenas for Documents, Docs. 3-1, 3-2, and 3-3. Several of the requests are not constrained by any date limitation, but the two requests which contain date limitations are focused upon information from over two years ago. Namely, Document Requests Nos. 2 & 3 in each subpoena seek information from "June 1, 2010 through September 30, 2010." *Id.*

Here, RFMD's argument for discovery appears to be that it will take time to serve Xiang and Du under the Hague Convention, and <u>during that time prior to service</u>, Xiang and Du may direct the deletion of emails, which would lead the ISPs to delete emails, resulting in "irreparable harm" to RFMD and justifying expedited discovery. This argument is not supported by the facts.

First, Xiang and Du have accepted service (or been served), rendering irrelevant the possible Hague Convention delay as well as the time period when they are not subject to this Court's authority. *See* Doc. 21. Having subjected themselves to the personal jurisdiction of this Court, they are now under an obligation not to effectuate spoliation of evidence.

Second, RFMD has not sought a TRO or preliminary injunction.

Third, no irreparable harm should be found when RFMD itself has waited so long. Wang was laid off over four (4) years ago when RFMD exited the transceiver business. Xiang and Du left RFMD nearly two (2) years ago. RFMD alleges that the Vanchip business introduced its chips over one (1) year ago in August 2011, with a further allegation concerning sales of one million units by November 2011. Compl. ¶ 55. As in the context of preliminary injunctions sought when substantial time has passed, RFMD's delay weighs strongly against allowing early discovery. *See generally Magnussen Furn., Inc. v. Collezione Europa USA, Inc.*, 116 F.3d 472, 1997 U.S. App. LEXIS 14861, *10 n.6 (4th Cir. June 19, 1997) (unpublished) (16-month delay and preliminary injunction denied); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir.

1989) (six- to nine-month delay and preliminary injunction denied); *Precision Links Inc. v. USA Prods. Group, Inc.*, 2009 U.S. Dist. LEXIS 86760 at *25-26 (W.D.N.C. Sept. 22, 2009) (five-month delay demonstrated no irreparable harm and preliminary injunction denied); *Static Control Components, Inc. v. Future Graphics, LLC*, 2007 U.S. Dist. LEXIS 36474 at *7-8 (M.D.N.C. May 11, 2007) (eight- to twelve-week delay and preliminary injunction denied); *Southtech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 420-21 (E.D.N.C. 2006) (six- to nine-week delay weighs against preliminary injunction and preliminary injunction denied).

RFMD's claims about the deletion of computer files in 2010 bear discussion as the conclusions in RFMD's filings are not supported by the statements in the affidavit filed by its forensic expert James Scarazzo ("Scarazzo").

First, Scarazzo's affidavit asserts that files were wiped or deleted only from Xiang's computer(s), not Du's computer.[6] This refutes and undermines RFMD's contention that such actions back in 2010 now justify discovery about Wang's and Du's email accounts – not Xiang's. Indeed, it is remarkable that RFMD makes vehement claims about how Xiang deleted files and used wiping software, while seeking discovery from ISPs about email accounts which RFMD's expert says are associated with Du and Wang – not Xiang. *See* Doc. 4-1, Scarazzo Aff. ¶ 9.

---

[6] In its motion and brief, RFMD carefully claims that only Xiang deleted files or installed wiping software. However, in a subsequent filing, RFMD asserted the much broader conclusion that "Defendants Du and Xiang have already demonstrated a willingness to destroy . . . ." See Doc. 15 ¶ 6. RFMD has not proffered any support for the notion that any files were wrongfully deleted from Du's computer or that Du was involved in the deletion of files from Xiang's computer.

Second, Scarazzo does not offer any opinion or facts about the motivation behind the installation of data wiping software or other deletions of files. Indeed, Scarazzo states that the software was put onto the T-60 and T-40 <u>in September 2010</u> – around the time that Xiang resigned from the company. As RFMD did not inform Xiang of any claims or dispute until this lawsuit nearly two years later, RFMD's conclusion that files were deleted with an intention to destroy evidence is not justified.

Third, RFMD concedes that it has had in its possession the computers in question for roughly two (2) years, but RFMD did not raise any issue until now. *See* Compl. ¶ 54. In addition, Scarazzo writes that he traveled for his forensic investigation on May 30, Doc. 4-1 ¶ 5,[7] but then nearly three (3) months passed before RFMD's lawsuit and request. This passage of time further demonstrates the lack of irreparable harm and the absence of a good cause for a deviation from the usual schedule of discovery.

Fourth, RFMD's conclusion that because files were deleted from Xiang's computer almost two years ago in connection with the return of a computer from a resigning employee, now Wang and Du will delete emails on accounts with Google, Yahoo! and AT&T is not warranted. Wang, Du, and the other defendants, are parties to this litigation and have subjected themselves to the personal jurisdiction of this Court.

Indeed, should any party, Plaintiff or a Defendant, take steps to intentionally delete evidence, the Court is well equipped to address it. The Defendants, for their part,

---

[7] Scarazzo writes that his travel was on May 30, 20<u>10</u>, a date prior to Xiang's and Du's resignations. For the purposes of this opposition, it is assumed that Scarazzo's declaration contains a typo and should have stated May 30, 20<u>12</u>. Even so, that time is approximately three (3) months before RFMD filed this lawsuit.

have authorized counsel to indicate that they have no intention to and will not delete, erase or destroy any documents, email or other materials concerning this dispute with RFMD.

## CONCLUSION

For the foregoing reasons, the motions for attachment and expedited discovery should be denied.

Respectfully submitted, this the 6th day of September, 2012.

/s/ David W. Sar
David W. Sar
N.C. Bar No. 23533
dsar@brookspierce.com

/s/ Joseph A. Ponzi
Joseph A. Ponzi
N.C. Bar No. 36999
jponzi@brookspierce.com

Brooks, Pierce, McLendon Humphrey
 & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
(336) 373-8850

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this date, I served the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>John F. Morrow, Jr.
>jmorrow@wcsr.com
>
>Laura R. Hall
>Laura.hall@allenovery.com
>
>Michael F. Westfal
>Michael.westfal@allenovery.com
>
>Paul B. Keller
>Paul.keller@allenovery.com,
>
>*Attorneys for Plaintiff*

This the 6th day of September, 2012.

>/s/ Joseph A. Ponzi
>Joseph A. Ponzi
>N.C. Bar No. 36999
>jponzi@brookspierce.com
>
>Brooks, Pierce, McLendon Humphrey
>   & Leonard, L.L.P.
>P.O. Box 26000
>Greensboro, NC 27420
>(336) 373-8850
>
>*Attorneys for Defendants*