# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 1:12-CV-00967-WO-JEP

| | |
|---|---|
| RF MICRO DEVICES, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>JIMMY S. XIANG, XIAOHANG DU,<br>FENG WANG and VANCHIP<br>TECHNOLOGIES LTD. )<br><br>Defendants. ) | **Plaintiff's Opposition to Defendants'<br>Motion to Dismiss or Stay, or for a<br>More Definite Statement** |

Through counsel and pursuant to Local Rule 7.3, plaintiff RF Micro

Devices, Inc. ("RFMD") submits this brief in opposition to defendants' motion to

dismiss or stay, or for a more definite statement (Dkt. 34).

## <u>INTRODUCTION</u>

As the Complaint makes clear, this case was brought by RFMD against

the defendants to address, among other things, their infringement of RFMD's United

States copyrights, their breach of their North Carolina employment contracts with

RFMD and their misappropriation of RFMD's United States trade secrets. To address

these serious improprieties, at the time it filed its Complaint RFMD also moved for

expedited discovery and for the attachment of certain assets of two of the individual

defendants who were believed to have assets in, but not be residents of, North

Carolina.

Although the Complaint and accompanying motions were filed nearly two months ago, defendants have yet to deny any of the allegations. Instead, defendants—without identifying any prejudice—began this litigation by opposing RFMD's motion to preserve and obtain relevant discovery and by opposing RFMD's motion for attachment, claiming that the defendants were residents of North Carolina and that they were fully prepared to stay in the United States in order to address the merits of RFMD's claims.

Now, after trying to prevent RFMD from preserving and obtaining relevant discovery and to have the opportunity to move their assets out of the United States, defendants ask this Court to dismiss (or stay) this case altogether in favor of litigation in China. Defendants seek this relief even though the parties, issues and remedies in this action are separate and distinct from those in China. Defendants also claim that China is a more convenient place to litigate the different issues than this United States forum, ignoring that the Chinese system allows no discovery, no depositions and no document production, as well as defendants' recent claim that they are North Carolina residents.

Defendants also use their motion to dismiss for the opportunity to ask this Court for a more definite statement concerning the precise technical trade secrets that defendants have stolen. The level of detail desired by defendants is not required by law at the pleading stage and is an effort by defendants to continue to delay this case while obtaining informal discovery that is not governed by a protective order. Indeed,

defendants' request contradicts the policy of the federal courts and the Federal Rules of Civil Procedure shielding trade secrets from public disclosure in litigation.  Finally, defendants argue that their Chinese companies, whose interests are in no way impaired or impeded by this action, are somehow indispensable parties whose non-joinder requires dismissal of this action.  Defendants' motion should be denied.

<u>**STATEMENT OF FACTS**</u>

RFMD brought this action against defendants Jimmy Xiang, Xiaohang Du, Feng Wang and Vanchip Technologies Ltd., a North Carolina company.  RFMD has asserted claims of U.S. copyright infringement against all defendants (Dkt. 1, Compl. ¶¶ 73-80), misappropriation of U.S. trade secrets against all defendants (<u>id.</u> ¶¶ 81-88), breach of North Carolina contracts against Messrs. Xiang, Du and Wang (<u>id.</u> ¶¶ 89-94), unfair and deceptive trade practices under North Carolina law against all defendants (<u>id.</u> ¶¶ 95-99), and conversion under North Carolina law against Messrs. Du and Wang (<u>id.</u> ¶¶ 100-104).

Separate and distinct from this case, and to address other serious harms caused by the defendants in China, RFMD also has initiated a civil action in Shanghai, China against a different set of defendants: Messrs. Xiang and Du along with Vanchip (Tianjin) Electronic Technology Co., Ltd. ("Vanchip Tianjin") and Shanghai Vanchip Electronic Technology Co., Ltd. ("Vanchip Shanghai").  (Dkt. 35-2 at 1-2.)  RFMD has asserted under Chinese law claims of unfair competition against the defendants in that action based on (1) misappropriation of trade secrets, (2) the disclosure of those

trade secrets in two patent applications filed with the Chinese patent office and (3) the copying and plagiarism of RFMD's datasheets. (Dkt. 35-2 at 5-6.)

RFMD has not asserted its U.S. copyright claim in the Chinese action nor has it asserted its North Carolina contract claims in that case. (Dkt. 35-2.) Mr. Wang and Vanchip Technologies Ltd. are not parties to the action in China. Vanchip Tianjin and Vanchip Shanghai are not parties to this action as this Court does not have personal jurisdiction over those entities.

## ARGUMENT

### I.    This Court Should not Abstain Under the Colorado River Abstention Doctrine

"As has been reiterated time and again, the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" Gannett Company v. Clark Constr. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002) (quoting Colorado River Water Consv. Dist. v. United States, 424 U.S. 800, 817 (1976)). Indeed, the Supreme Court made clear in Colorado River that "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." 424 U.S. at 813. Defendants fail to apply the appropriate standard and their request to have this Court abstain from exercising its jurisdiction should be denied.

#### A.    The Action in China is not a Parallel Proceeding

Any application of the Colorado River abstention doctrine requires as a predicate a parallel proceeding. See McLaughlin v. United Va. Bank, 955 F.2d 930,

4

935 (4th Cir. 1992) ("Of course, even before considering the <u>Colorado River</u> factors, it is first necessary to determine whether there exist parallel duplicative [ ] proceedings.").  This strict requirement requires that "substantially the same parties litigate substantially the same issues in different forums."  <u>New Beckley Mining Corp. v. Int'l Union</u>, 946 F.2d 1072, 1073 (4th Cir. 1991).[1]

### i.    The Parties in the two Actions are not Substantially the Same

Federal courts in North Carolina have held that the absence of a single defendant from a concurrent foreign proceeding establishes that such a proceeding is not parallel.  <u>See</u> <u>Microban</u>, 2010 WL 5644785, at *3.  Here, not only are Vanchip Tianjin and Vanchip Shanghai not parties to this litigation, but Mr. Wang and Vanchip Technologies Ltd. are not parties to the litigation in China.  This Court does not have personal jurisdiction over the Chinese Vanchip companies, and the Chinese courts do not have personal jurisdiction over Mr. Wang, an American citizen living and working in North Carolina, or the North Carolina company Vanchip Technologies Ltd.  It is anything but inconsequential, as defendants argue, that Mr. Wang is a defendant in this case but not in China.  (Dkt. 35, Def. Br. at 9.)  Rather, RFMD would have no remedy

---

[1]  <u>See</u> <u>also</u> <u>Microban Prods. Co. v. Microban Canada Inc.</u>, No. 3:10CV50—RLV—DSC, 2010 WL 5644785, at *2 (W.D.N.C. June 15, 2010) (quoting <u>Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines</u>, 925 F.2d 1193, 1195 (9th Cir. 1991) ("[T]he fact that the parallel proceedings are pending in a foreign jurisdiction rather than in a state court is immaterial.  We reject the notion that a federal court owes greater deference to foreign courts than to our own state courts.")), *adopted by* 2011 WL 251209 (W.D.N.C. Jan. 26, 2011).

against Mr. Wang (and Vanchip Technologies Ltd.) should this Court abstain from hearing this action.

Further, RFMD has never indicated that "Wang was simply an addition to, and not in charge of, the Chinese Vanchip enterprise," as defendants claim. Id. Far from it. It is clear that Mr. Wang disclosed RFMD's United States trade secrets and breached the North Carolina Inventions, Confidentiality and Nonsolicitation Agreement (the "Confidentiality and Nonsolicitation Agreement") that he signed with RFMD. (Compl. ¶¶ 62-69, 92.) Mr. Wang, therefore, plays a central role in the defendants' scheme to misappropriate and infringe on RFMD's U.S. rights.

ii. **The Legal Issues Presented in the two Actions are not Substantially the Same**

Fourth Circuit precedent also makes clear that despite some overlap between this case and the litigation in China, the fact that the two cases address separate and distinct legal issues forecloses any application of the Colorado River abstention doctrine. See McLaughlin, 955 F.2d at 935.

In McLaughlin, the district court dismissed a federal action in favor of four pending state proceedings. Id. at 933-34. The Fourth Circuit reversed, finding that the federal action involved a breach of contract claim not at issue in any state court proceeding and as result, "[i]t cannot be said therefore that parallel duplicative proceedings exist in state court so as to present a Colorado River issue." Id. at 935; see also Microban, 2010 WL 5644785, at *3 (finding the cases not parallel because "the federal suit is broader than the [foreign] case, and concerns the interpretation of a

6

separate contract [ ] that is not at issue in the [foreign] case"). Just as in <u>McLaughlin</u> and <u>Microban</u>, this action is broader (as well as different) than the China litigation.

Defendants argue that "[t]his later-filed North Carolina case makes substantially the same allegations" as the China litigation. (Def. Br. at 8.) That is not true—the legal issues in the two cases are not substantially the same, and mere factual overlap is insufficient to support <u>Colorado River</u> abstention. <u>See, e.g.</u>, <u>New Beckley</u>, 946 F.2d at 1073 (reversing dismissal in favor of state court proceeding that district court found "arose from and relate[d] to" the same selective strike by defendant labor union). Additionally, as in <u>McLaughlin</u> and <u>Microban</u>, this action includes three separate breach of contract claims against the individual defendants that are not at issue in the litigation in China. (Compl. ¶¶ 89-94.)[2] This action also includes a U.S. copyright infringement claim that is not at issue in the China case. (<u>Id.</u> ¶¶ 73-80.)

### iii. The Remedies Sought in the two Actions are not Substantially the Same

Fourth Circuit law also precludes any application of the <u>Colorado River</u> abstention doctrine where different remedies are sought in the two actions. For example, in <u>New Beckley</u>, a company filed suit in state court against a labor union alleging violations of West Virginia law stemming from the union's strike against the company. 946 F.2d at 1073. The plaintiff later filed suit in federal district court alleging RICO violations and violations of West Virginia law based on the same strike.

---

[2] The Confidentiality and Nonsolicitation Agreements expressly state that they are governed by North Carolina law. (<u>See</u> Exhibits A, B and C (attached hereto) at ¶ 6(d).)

The Fourth Circuit reversed the district court's dismissal of the federal action and found that while "the parties in both actions are virtually identical, [] the issues raised and remedies sought are not.  New Beckley seeks compensation in federal court and equitable relief in state court."  Id. at 1074.

Here, RFMD seeks separate and distinct remedies in the two actions. While both proceedings arise from a similar set of circumstances resulting in some factual overlap between the cases, as in New Beckley, the different remedies sought in the two actions preclude the application of the Colorado River abstention doctrine. This action seeks compensatory damages and injunctive relief for breach of contract and copyright claims that are not at issue in the Chinese litigation.  (Compl. ¶¶ 78-79, 93-94.)

### B.    The Balance of the Colorado River Abstention Factors does not Satisfy the "Exceptional Circumstances" Test

To support abstention, the balance of factors must demonstrate "'exceptional circumstances, the clearest of justifications,' warranting abstention." Gannett, 286 F.3d at 748 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983)).  The Fourth Circuit analyzes six factors in determining whether "exceptional circumstances" justify the abstention of a district court's jurisdiction:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5)

whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463-64 (4th Cir. 2005). The Supreme Court has established that, as a starting point, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16. Here, the balance of these factors demonstrates that abstention is clearly not appropriate.

*First,* there is no property involved in this litigation such that the Chinese court may assume jurisdiction "to the exclusion of others" as is required by this factor. While the Chinese court has seized assets from the bank accounts of the Chinese Vanchip companies (Def. Br. at 10), a motion to attach the assets of Messrs. Xiang and Du in North Carolina is currently pending before this Court. (Dkt. 5.)

*Second,* the U.S. federal forum is decidedly more convenient for all of the parties in this case. RFMD cannot obtain the complete relief that it seeks without litigating in this court as the Chinese courts cannot adjudicate its contract rights that are expressly governed by North Carolina law. Additionally, the Chinese court would be inconvenient as Mr. Wang is not subject to the jurisdiction of that court and, more importantly, RFMD would not be entitled to any discovery in the Chinese action. See, e.g., Thomas Pattloch, Intellectual Property Law in China, § 6(a) (2005) (noting that in Chinese civil litigation, "[t]here are no depositions or interrogatory procedures, no real

9

discovery and no extensive obligation to produce all files and documents of possible relevance for the case") (attached hereto as Exhibit D).

*Third,* defendants assert that avoiding piecemeal litigation strongly favors abstention because "there is a risk of inconsistent and contradictory decisions and proceedings." (Def. Br. at 11.) Fourth Circuit law is clear that the "'mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.'" Chase Brexton, 411 F.3d at 465 (quoting Colorado River, 424 U.S. at 816). Allowing the China litigation to proceed simply will not resolve any issue being addressed in the Complaint at issue here—it involves different parties, different claims and different law.

*Fourth,* defendants ignore Fourth Circuit law that makes clear that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Gannett, 286 F.3d at 748 n.10 (finding that because the state action was filed within a day of the federal action and "both had progressed at similar paces," this factor counsels against abstention); see also New Beckley, 946 F.2d at 1074 (Although the state action was filed before the federal action, the "order in which the courts obtained jurisdiction matters little, since New Beckley filed the suits in March and December of the same year."). Here, the Chinese action was filed a mere two weeks before this action, weighing against abstention even more heavily than the timing in New Beckley. And as in Gannett, these two actions have "progressed at similar paces" with both courts

holding preliminary conferences and deciding preliminary matters such as motions for attachment. To assert, as defendants have, that "abstention is strongly favored since this case was second-filed" (Def. Br. at 11), completely ignores Fourth Circuit law and the factual circumstances of this case.

Fifth, defendants cite no authority for their proposition that a question about which jurisdiction's laws will apply to RFMD's trade secrets claims favors abstention. Such a choice of law issue is commonplace for any dispute involving multiple jurisdictions and provides no support for the narrow exception to the duty of a court to adjudicate a controversy properly before it. Colorado River, 424 U.S. at 813.

Sixth, defendants claim that "RFMD should not question whether the Chinese court will adequately protect its rights as RFMD chose to start this dispute by filing first in China." (Def. Br. at 12.) To the contrary, RFMD has not asserted its U.S. copyrights in the Chinese courts—it has only done so here. Further, RFMD's breach of contract claims are expressly governed by North Carolina law, making this Court the only adequate forum for litigating such claims as there is no precedent under Chinese law for a Chinese court to enforce foreign law-governed employment contracts such as the Confidentiality and Nonsolicitation Agreements. Finally, Mr. Wang and Vanchip Technologies Ltd. are not subject to the jurisdiction of the Chinese courts and, as a result, the Chinese courts cannot adjudicate any claims that RFMD has asserted against those defendants.

## II. This Court Should Deny Defendants' Motion to Dismiss for *Forum Non Conveniens*

The same defendants who represented to this Court that North Carolina was their home and that they were prepared to remain here to address RFMD's allegations have now moved to dismiss this action for *forum non conveniens* in favor of the litigation in China. (See Dkt. 23, Xiang Decl. at ¶ 2; Dkt. 24, Du Decl. at ¶ 2.)

Passing on these contradictory positions, defendants also misapply the proper standard in claiming that "a matter *should* be dismissed when the alternative forum is '(1) available; (2) adequate; and (3) more convenient in light of the public and private interests involved.'" (Def. Br. at 12 (emphasis added).) Although these are the required elements for a *forum non conveniens* dismissal, the Supreme Court has made clear that "a plaintiff's choice of forum should rarely be disturbed." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). Instead, it is "when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,'" that a district court *may* dismiss on *forum non conveniens* grounds. Id.

This Court should deny defendants' *forum non conveniens* motion because the alternate forum in China is unavailable and inadequate. As the Fourth Circuit made clear in Galustian v. Peter, an alternate forum is unavailable "when the other forum does not provide for a cause of action for the plaintiff's alleged injury." 591 F.3d 724, 731 (4th Cir. 2010). Here, the parties to the two suits are different—

12

indeed, neither court has jurisdiction over at least two of the defendants in the other action—and the causes of action are distinct and are governed under the respective laws and standards. In fact, there is no precedent under Chinese law to enforce the Confidentiality and Nonsolicitation Agreements that defendants breached in this case.

The public and private interest convenience factors also establish that the Chinese forum is decidedly more inconvenient. Piper Aircraft, 454 U.S. at 241 n.6. As to the public interest factors, defendants assert that "China would have an interest in ensuring that Chinese patents are issued to the proper parties" and that "North Carolina and the United States would have less of an interest, if any, in making sure that Chinese patents are properly issued." (Def. Br. at 13.) This is a stunning characterization of this case. First of all, this case involves trade secrets and other intellectual property stolen from a North Carolina company by defendants who claim to be residents of North Carolina and who subsequently formed a competing company in North Carolina, all of which violated United States federal and North Carolina law and breached contracts governed by North Carolina law. North Carolina and the United States' interest in protecting the intellectual rights of a North Carolina company that were stolen by its own employees and taken to China to form a competing company—while still receiving paychecks from the North Carolina company—essentially goes without saying. The "local interest in having localized controversies decided at home" could not be stronger in this case. Tang v. Synutra Int'l, Inc., 656 F.3d 242, 249 (4th Cir. 2011). But more importantly, the only reason China has any

interest in the "Chinese patents" is because the defendants stole the invented technology from a North Carolina company and then filed for patent protection in China. China's interest in this case stems solely from the improper actions of the defendants. To allow defendants' unilateral actions to dictate the forum of this lawsuit would turn on its head the "strong presumption in favor of the plaintiff's choice of forum." <u>Piper Aircraft</u>, 454 U.S. at 255.

As to the private interests, defendants assert that it would be more convenient to proceed in China because that forum is closer to the sources of proof in this case, namely documents and third party witnesses. However, China would be decidedly less convenient because there is no discovery process for civil litigation in China. Pattloch, <u>Intellectual Property Law in China</u>, § 6(a) (2005) (noting that in Chinese civil litigation, "[t]here are no depositions or interrogatory procedures, no real discovery and no extensive obligation to produce all files and documents of possible relevance for the case") (attached hereto as Exhibit D). Accordingly, there would be no access to the relevant sources of proof in this case. Second, and perhaps more importantly, a large amount of evidence for both actions resides in North Carolina. For example, all the employment records are kept in North Carolina, and so are documents relating to RFMD's trade secrets and defendants' theft thereof. The defendants' work computers remain in North Carolina and the testing of the knock-off Vanchip products at issue was primarily done in North Carolina.

## III.    RFMD has Satisfied the Pleading Requirements Under Rule 12(b)(6)

Defendants also move to dismiss for the failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The pleading standard under the Federal Rules of Civil Procedure is clear: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Defendants mainly cite case law that does not involve a motion to dismiss, with such cases involving either a motion for preliminary injunction or a motion for summary judgment.  The standard on such motions is simply not comparable to the issue before this Court as the pleading standard under the Federal Rules of Civil Procedure does not require "detailed factual allegations."  Twombly, 550 U.S. at 555.  Nevertheless, RFMD has more than satisfied the pleading requirements of the Federal Rules of Civil Procedure and as a result, defendants' motion should be denied.

### A.    RFMD has Pleaded with Sufficient Particularity to Satisfy the Pleading Requirements of the Federal Rules of Civil Procedure

As defendants themselves recognize, this Court must balance the pleading standard against the "protection extended to trade secrets foster[ing] research and development and the improved products it elicits."  FMC Corp. v. Cyprus Foote Mineral Co., 899 F. Supp. 1477, 1484 (W.D.N.C. 1995).  Federal courts have explicitly held that there is not a heightened pleading requirement for trade secrets claims:  a "plaintiff is not and cannot be expected to plead its trade secrets in detail.

Such a public disclosure would amount to an effective surrender of trade secret status."
DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14, 24 (D.D.C. 2002) (quoting IDX
Sys. Corp. v. Epic Sys. Corp., 165 F. Supp. 2d 812, 817 (W.D. Wis. 2001)).

Requiring RFMD to identify the trade secret technologies at issue in this
case would amount to a public disclosure of such trade secrets. Regardless, RFMD's
pleading more than satisfies even the standard proposed by defendants: that RFMD
"identify the trade secret with sufficient particularity so as to enable a defendant to
determine exactly what he is accused of misappropriating." (Def. Br. at 14.) RFMD's
complaint identifies "its technology related to combo bias, the design and
manufacturing specifications of its circuitry and chips, its sales and business plans, and
its manufacturing costs" as the trade secrets that defendants misappropriated during
their employment with RFMD. (Compl. ¶ 83.) And RFMD has gone further than that,
identifying a specific business plan that defendants created while employed at RFMD
that incorporated RFMD's trade secrets. (Id. ¶ 39.) Additionally, RFMD identifies
specific Vanchip products that incorporate RFMD's trade secrets into their technology.
(Id. ¶¶ 55, 57.) Finally, RFMD explains that its trade secrets were also disclosed by
defendants in the two patent applications that defendants filed in China. (Id. ¶¶ 62-67.)

Not satisfied with this specificity, defendants complain that RFMD has
not outright identified what the "technology related to combo bias" is. (Def. Br. at 17.)
Such detail is simply not required under the federal pleading standard. All that is
required is pleading sufficient facts that, accepted as true, "state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570. Defendants are not only aware of the technology at issue, they have been pointed to specific business plans, products and patent applications that incorporate RFMD's technical and business trade secrets.

### B. The Case Law Cited by Defendants is Distinguishable

Defendants' motion to dismiss under Rule 12(b)(6) depends on case law that is entirely distinguishable from this case. Defendants primarily rely on FMC as an "instructive" case. (Def. Br. at 15-16.) FMC however, involved a motion for a preliminary injunction that requires a plaintiff to demonstrate a "likelihood of success on the merits," a very different standard than having to show only that a claim is "plausible on its face." 899 F. Supp. at 1481; see also Analog Devices, Inc. v. Michalski, 579 S.E.2d 449, 452 (N.C. App. 2003). Additionally, the court found that the trade secrets identified by the plaintiff in FMC "implicate almost every stage in the production of battery-quality lithium metals" and therefore an injunction would "effectively preclude[] [the defendant] from doing any work in his general area of expertise." Id. at 1482. Such a concern does not exist here. More importantly, RFMD has identified a specific technology misappropriated by defendants—technology related to combo bias—as opposed to technology related to every stage of production of semiconductor components. (Compl. ¶ 83.)

Similarly, defendants rely on McElmurry v. Alex Fergusson, Inc. for the proposition that "Plaintiff's claim to 'any information' that it had on [its customer] as a trade secret is not specific enough to alert Defendant or the court to what plaintiff

alleges Defendant has misappropriated." No. 1:04CV389, 2006 U.S. Dist. LEXIS 10760, at *59 (M.D.N.C. March 8, 2006). McElmurry, however, involved a motion for summary judgment, which requires far more of a plaintiff than a motion to dismiss. Id., at *19. Nevertheless, RFMD has pleaded with far more specificity than the plaintiff in McElmurry. As to the business trade secrets, RFMD has not only identified that its manufacturing costs were misappropriated by defendants, but also the specific Vanchip business plan that incorporated this and other RFMD business trade secrets. (Compl. ¶¶ 39, 83.)

Finally, while Washburn v. Yadkin involved a motion to dismiss under state law, the general allegations contained in that complaint are clearly not analogous to the specific allegations in RFMD's complaint. Washburn v. Yadkin, 660 S.E.2d 577, 586 (N.C. App. 2008) (granting motion to dismiss where defendant alleged in counterclaim that plaintiffs "acquired knowledge of [defendant's] business methods; clients; their specific requirements and needs; and other confidential information pertaining to [defendant's] business . . . [and that plaintiffs] used its trade secrets"). The same can be said of Aecom Technology Corp. v. Keating, 11 CVS 9225 (N.C. Bus. Ct. Feb. 6, 2012) (attached as Exhibit 5 to defendants' Supporting Brief), where the court dismissed a trade secret claim that merely alleged that defendant obtained "confidential commercial information belonging to [plaintiff] including 'customer lists, customer contract information, pricing information, and product information.'" RFMD has clearly provided far more specificity in its complaint than was provided in these

cases.  In sum, RFMD's complaint plainly satisfies the federal pleading standard, which does not require a plaintiff to provide in its complaint the precise level of detail urged by defendants.  <u>DSMC</u>, 273 F. Supp. 2d at 24.

### C.  Defendants are not Entitled to Early Discovery by way of a Motion for a More Definite Statement

Accordingly, defendants should have no trouble determining exactly what they are accused of misappropriating from RFMD.  Should there be any question however, a motion for a more definite statement is not the proper avenue for acquiring more detail on the trade secrets at issue.  Instead, defendants should utilize the various discovery tools available to them under the Federal Rules of Civil Procedure.  <u>See Static Control Components, Inc. v. Darkprint Imaging, Inc.</u>, 135 F. Supp. 2d 722, 733 (M.D.N.C. 2001) (denying motion for a more definite statement of trade secret misappropriation claim because "[d]efendant must resort to discovery to provide the requested details of the claims") (citing <u>Schults v. Clay Transfer Co.</u>, 50 F.R.D. 480, 481 (E.D.N.C. 1970)).  Such a procedure would allow RFMD to provide any additional detail that defendants purportedly require, while allowing RFMD to preserve the highly sensitive nature of that information through confidentiality designations governed by a mutually agreeable protective order.  <u>See</u> Fed. R. Civ. P. 26(c)(1)(G).

## IV.  <u>The Chinese Vanchip Companies are not Indispensable Parties</u>

Finally, defendants have asked this Court to dismiss this case because they claim that the Chinese Vanchip companies are indispensable parties under Federal Rules of Civil Procedure 12(b)(7) and 19(b).  Rule 19 sets forth a two-step inquiry for

19

a district court to determine whether a party should be joined in an action. The district court first must determine whether the party is "necessary" to the action under Rule 19(a). If the court determines that the party is "necessary," it must then determine whether the party is "indispensable" to the action under Rule 19(b). Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc., 210 F.3d 246, 249 (4th Cir. 2000). The Chinese Vanchip companies are not necessary parties under Rule 19(a) because this Court can accord complete relief among the existing parties in their absence and this action will not impair or impede any purported interest that these companies have claimed in this action. Accordingly, such companies cannot be considered indispensable under Rule 19(b).

The defendants appear to rely on the disputed ownership of the two Chinese patent applications purportedly owned by *one* of the Chinese entities, Vanchip Tianjin, as the interest that could be implicated by this action and to demonstrate that "this Court is not able to provide all of the relief requested" in this action. (Def. Br. at 20.) RFMD seeks damages and equitable relief for defendants' copyright infringement, misappropriation of trade secrets, breaches of contract, unfair and deceptive trade practices and conversion. The absence of Vanchip Tianjin in no way affects this Court's ability to accord such relief. Accordingly, the Chinese Vanchip companies cannot satisfy the requirements for a "necessary" party under Rule 19(a) and therefore cannot be considered "indispensable" parties whose non-joinder requires dismissal under Rule 19(b).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or stay, or for a more definite statement should be denied.


Dated:          October 12, 2012                    Respectfully submitted,

                                                     /s/ Paul B. Keller
                                                     Paul B. Keller
                                                     Laura R. Hall
                                                     Michael Westfal
                                                     **ALLEN & OVERY LLP**
                                                     1221 Avenue of the Americas
                                                     New York, NY 10020
                                                     Tel:  (212) 610-6300
                                                     Fax:  (212) 610-6399
                                                     paul.keller@allenovery.com
                                                     laura.hall@allenovery.com
                                                     michael.westfal@allenovery.com

                                                     John F. Morrow, Jr.
                                                     North Carolina State Bar No. 23382
                                                     Brent Powell
                                                     North Carolina State Bar No. 41938
                                                     **WOMBLE CARLYLE**
                                                     **SANDRIDGE & RICE, LLP**
                                                     One West Fourth Street
                                                     Winston-Salem, NC  27101
                                                     Tel:  (336) 721-3584
                                                     Fax:  (336) 733-8429
                                                     jmorrow@wcsr.com
                                                     brpowell@wcsr.com

                                                     Benjamin Bai
                                                     **ALLEN & OVERY LLP**
                                                     15F, Tower II, Shanghai IFC
                                                     8 Century Avenue
                                                     Pudong, Shanghai  200120
                                                     China
                                                     +86 21 2036 7000

Allen & Overy LLP is appearing
pursuant to Local Rule 83.1(d).

*Counsel for Plaintiff*
*RF Micro Devices, Inc.*