**Exhibit D**



INPLC S E II                                                                                                                          Page 1
Intell. Prop. in China s. E II
**(Cite as: INPLC S E II)**

Aspen Publishers
Intellectual Property Law in China

Thomas Pattloch

Copyright © 2005 Aspen Publishers, Inc., a Wolters Kluwer business

Current through the 2005 Edition

E. Enforcement

§ II. Civil Law Enforcement

**1. General Remarks**

Civil law enforcement generally refers to actions in court. The number of IP cases dealt with in Chinese courts is constantly on the rise, prompting most courts in bigger cities to have a specialised chamber for IP matters. It is important to note that court decisions, unlike those in Anglo-Saxon jurisdictions, do not have a binding effect for other courts (there is no *stare decisis*). They may serve as reference only. [FN10]

The usual way to initiate an action is to file a lawsuit for infringement of a right that is based on tort. Other questions, such as asserting ownership, rather concern contractual matters. In the past it was already possible to seek a non-infringement opinion of the courts which is close to a negative declaratory action though not exactly the same: Chinese law and specifically the Civil Procedure Code [FN11] does not positively recognise an action for the determination of non-infringement. Some scholars tend to recommend such a legal instrument be introduced in order to battle abuse of the new pre-litigation measures. [FN12] A non-infringement opinion was until recently rarely seen in practice. This was blamed on the lack of provisions regarding punitive damages or compensation for attorney's fees. [FN13] This has changed with a Notice of the Supreme People's Court following an inquiry into a pending declaratory non-infringement action in the province of Jiangxi in 2002. The Supreme People's Court explicitly recognised the possibility of such action. [FN14] The admissibility of such an action was further confirmed in other lawsuits concerning patent rights. The declaratory non-infringement action has led to the problem of possible "torpedoes" against impending infringement actions by right holders.

Costs of enforcement in court in comparison to other jurisdictions are much lower, though nowhere near cheap. [FN15] Patent litigation in particular can require substantial financial resources if an expert is necessary. At the time of writing, to the knowledge of the author, no litigation insurance was available in China.

*2. Competent Courts*

In the PRC, there exist four levels of courts with a two instance trial system. [FN16] Judgments of appellate courts are immediately binding and enforceable upon service. [FN17] On the first level, there are the Basic People's Courts. One tier above are the Intermediate People's Courts. Still higher are the Higher People's Courts. Finally, the highest court in civil and administrative cases is the Supreme People's Court located in Beijing.

*(a) Basic People's Courts*

The basic courts exist at county and city level and there are more than 3,000 throughout the country. [FN18] IP matters previously were only heard on this level in domestic copyright and trade mark matters (especially in Beijing and Shanghai), but not if a foreigner was involved or for patent cases. Nowadays there is a tendency to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

designate the basic courts also more broadly for trade or copyright mark matters even if involving foreigners.

### (b) Intermediate People's Courts

These courts, presently numbering close to 400, exist at prefecture level of the provinces and in districts of municipalities directly under the central government. [FN19] IP matters as well as all matters involving foreigners generally start at this level. [FN20] In trade mark and copyright cases, actions can be brought to any intermediate court if territorial jurisdiction exists. However, in patent infringement cases, only the intermediate courts in the capitals of the provinces, autonomous regions and municipalities directly under the central government and those specially designated by the Supreme People's Court have jurisdiction. [FN21] For many Intermediate People's Courts, their territorial jurisdiction coincides with the local administrative district. In some areas, one Intermediate People's Court has proven to be insufficient, and large cities such as Beijing and Shanghai have two. [FN22]

### (c) Higher People's Courts

There are around 30 Higher People's Courts on the provincial level including autonomous regions and municipalities directly under the central government with provincial status such as Beijing or Shanghai. Usually IP cases are heard by the Higher People's Court in second instance, where the court reviews facts and legal reasoning. The Higher People's Courts also exercise adjudication supervision for the lower courts and must oversee and approve the decision of a lower court not to enforce a foreign arbitration award. A decision for the award to be enforced needs no approval. [FN23]

### (d) Supreme People's Court

The SPC has a wider power than supreme courts in other countries. Generally, it may review cases not only according to the stipulations in the various laws but also according to a self-assessed need (Sec. 21 No. 2 Civil Procedure Code). This means, that if deemed appropriate, the court may act *ex officio* and delegate itself to hear a particular case no matter at what level the case should originally be heard according to the law. [FN24] The SPC may review cases not only in respect of legal questions, but also supervise and correct mistakes made by the lower courts as to finding of the facts and evaluation of the findings. [FN25]

Even more important is the power of the SPC to interpret the application of the law in so-called Explanations, Notices, Opinions or Circulars which may include jurisdiction matters. [FN26] These are legally speaking only directly binding for the courts in the country, but actually do have a very strong influence on legislation and handling of the provisions concerned by the administration. The reason for this widely used power is the lack of detailed provisions in the original source of law, the relevant statutes. Besides the interpretation of existing statutes, the SPC in some cases also submits drafts which adds legislative elements to its powers. [FN27]

### (e) Courts and judges

Courts in China are not as independent as they are in other jurisdictions, although in theory Art. 126 of the PRC Constitution stipulates so. Fundamentally, the court system is not based on the theory of separation of powers. [FN28]

Judges are subject to the Judge's Act of 28 February 1995 that entered into force on 1 July 1995. The hierarchy consists of a total of 12 ranks with the function as President, Vice-President, Members of a Judicial Committee as well as (Chief) Judges and Associate (Chief) Judges of Divisions within the various courts. [FN29] The President of the SPC at the highest rank is officially elected for a term equal to that of the People's Congress and subject to dismissal by the National People's Congress at any time with or without reason. In fact, it is the Communist Party of China that first discusses personnel, decides on who serves as President and Vice-President and then formally forwards the names to Congress for confirmation.

Usually a court President is also the Communist Party Secretary of the court. [FN30] The Members of the Ju-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

dicial Committee, Chief Judges and Associate Chief Judges of Divisions and the judges are officially appointed and dismissed by the Standing Committee of the National People's Congress upon submission of the President of the SPC. [FN31] The same method applies for the President and other judges at the various state levels with the parliament at provincial, prefecture and local level. Assistant Judges are appointed by the President of the relevant court. [FN32]

This power of the parliament to remove a judge if need be means that an appointed judge has no independence. According to Arts. 67, 104 and 128 Constitution, the SPC is responsible to the NPC and its Standing Committee that created them. The courts are supervised in their work by each corresponding parliament, that is, the People's Congress on national, provincial, municipal or local level. [FN33] The People's Congress may inquire into case decisions or rulings and may review court files. [FN34] Additionally, for their financial funding the courts depend on their respective People's Congress. For example, the Intermediate People's Courts are funded by the local governments.

Besides influences from outside, it is normal for Chinese judges of different instances to consult each other about a pending case to ensure that the higher instance court does not have to overrule the decision of the lower court. Strong personal relationships between judges, party cadres and congress members may result in obscure decision making procedures and an apparent lack of transparency. [FN35] An additional burden to effective and just judgments is the sometimes poor legal training of judges. Strong efforts have been made to remedy this fact, which is a legacy of the Cultural Revolution that almost eradicated the legal profession of lawyers and judges. [FN36]

### (f) Decision finding, appeals and re-trials

Cases generally are to be heard in open trial except for cases involving state secrets, individual privacy cases or offences committed by minors. Open cases should be announced before holding the trial and citizens are allowed to attend freely. Judgments are also publicly announced. [FN37]

Cases of first instance usually are heard by a panel composed of three to seven judges, in simple cases by one judge only. However, the decision usually has to be approved by the court President who frequently ignores the proposed decision and reasoning and may change the decision at will. [FN38]

Cases of appeal are heard by a panel consisting of three to five judges. The presiding judge of the panel is appointed by the President of the court or the Chief Judge of a court Division. Decisions are met by majority with a minority report in case of differing opinions. Major or complicated cases (i.e. cases that are controversial, complex, involve important persons, will have influence on the litigants or community or which touch upon vague, absent or inconsistent statutes in respect of which the judges of a court disagree) may also be transferred to a judicial committee set up in the people's courts at all levels which consists of the President of the court, Chief Judges of the Divisions and senior judges.

The judicial committee is the highest authority in the internal court organisation and decides by majority. [FN39] Litigants cannot know or challenge this mode of deciding a case [FN40] because it officially only concerns internal affairs of the court and no files are accessible to lawyers of the parties. [FN41]

A Chinese peculiarity is the system of re-trial. Within two years after a judgment has become legally binding, the SPC or the court on the level above the court which gave the final judgment may *ex officio* review a case and order a re-trial at the original level if the case has been decided wrongly. Concerned parties may also apply for retrial within two years although chances that such plea will be successful are very slim. [FN42]

### 3. Arbitration

For many years lawyers were set on recommending arbitration proceeding as a more likely and successful way to enforce one's rights. Generally, arbitration is thought to be time and cost saving. An additional advantage is that China is party to the New York Convention of the Recognition and Enforcement of International Arbitra-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion Awards.

Arbitration is regulated in Sec. 257 *et seq.* Civil Procedure Code as of 9 April 1991 and the Arbitration Act of 1995 in its current revised version. Sec. 257 Civil Procedure Code stipulates that arbitration clauses in foreign economic contracts or subsequent written arbitration agreements bar the way to the courts. Property preservation measures can only be executed by the courts (Sec. 258 Civil Procedure Code) as is the case with recognition and enforcement of foreign arbitration bodies (Sec. 269 Civil Procedure Code). The SPC has decreed that only certain courts have the jurisdiction to deal with enforcement of foreign and foreign-related arbitration awards. [FN43] This new system seems to have substantially lessened the number of refusals to enforce arbitration awards. [FN44]

The most popular arbitration commission in China is the China International Economic and Trade Arbitration Commission ("CIETAC") with headquarters in Beijing and branches in Shanghai and Hong Kong. [FN45] As of recently, other national arbitration bodies such as the Beijing Arbitration Commission may also accept cases involving foreigners. Parties of an arbitration agreement naming CIETAC can choose the applicable law and to some extent the procedural rules. Usually each party has to choose one arbitrator from a panel. CIETAC arbitration procedures are relatively informal and typically last for no more than a day. Arbitrators usually take a comparatively broad-brush approach with regard to evidence. [FN46]

**4. Jurisdiction in IP Cases**

Jurisdiction matters generally are regulated in Secs. 18 *et seq.* Civil Procedure Code and for foreign related cases in Secs. 243 *et seq.* Civil Procedure Code. [FN47] Administrative cases such as for patent and customs-related matters are covered by Secs. 13 *et seq.* Administrative Procedure Act.

The SPC has issued a variety of Interpretations for patents, trade marks and copyrights in order to further clarify jurisdiction problems. [FN48] These are most notably:
    -- the Several Provisions of the SPC on Issues Relating to the Application of Law to Adjudication of Cases of Patents Disputes ("SPC Interpretation Patent Cases"), adopted on 19 June 2001 by the SPC; [FN49]
    -- the Interpretation by the SPC on Issues Relating to the Application of Law to Adjudication of Cases of Trade Mark Disputes ("SPC Interpretation Trade Mark Cases"), adopted by the SPC on 12 October 2002 and entering into force on 16 October 2002; [FN50]
    -- the Interpretation by the SPC of the Issues Relating to Jurisdiction over and the Scope of the Application of Law to the Hearing of Trade Mark Cases ("SPC Trade Mark Jurisdiction Rules"), adopted on 25 December 2001 and entering into force on 21 January 2002; [FN51]
    -- the Several Issues Relating to the Application of Law to Trial of Cases of Civil Disputes over Copyright ("SPC Interpretation Copyright Cases"), adopted by the SPC on 12 October 2002 and entering into force on 15 October 2002; [FN52]
    -- the Interpretation by the Supreme People's Court of Several Issues Relating to Adjudication of and Application of Law to Cases of Copyright Disputes on Computer Networks, in effect since 21 December 2000 and recently revised on 23 December 2003; [FN53] and
    -- the Interpretation by the SPC of Several Issues Relating to the Application of Law in Adjudication of Cases of Civil Disputes over Domain Names on Computer Network ("SPC Interpretation Domain Names"), [FN55] adopted by the SPC on 26 June 2001 all contain detailed provisions on jurisdiction.

***(a) Subject matter jurisdiction***

*(1) Patents*

According to Rule 2 SPC Interpretation Patent Cases, patent disputes in the first instance are subject to the jurisdiction of the Intermediate People's Courts in the places where the provincial governments, governments of autonomous regions or municipalities directly under the central government are located.

Matters to be accepted by the court include disputes over ownership, assignment, infringement, service inven-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tions, pre-litigation, compulsory licences and dissatisfaction with administrative decisions (Rule 1 SPC Interpretation Patent Cases). The Circular on Several Problems in Patent Trial Work, promulgated by the SPC on 16 February 1985, in its Rule 1 No. 1 directs all cases concerning the grant of a patent right, its invalidation or its being upheld and all disputes concerning compulsory licence fees to the Intermediate Beijing People's Court in first instance and the Higher Beijing People's Court in second instance.

Should certain other courts be required to hear the patent disputes, they must gain the approval of the SPC first.

The Civil Procedure Code stipulates in Sec. 39(1) that the Higher People's Courts can act as courts of first instance in cases of great impact on the area of jurisdiction. The Higher People's Courts also act as courts of first instance in cases where the claimed amount of compensation reaches a certain level in value, with the necessary standard in this respect varying from province to province. [FN56]

A higher court may also transfer a case to a lower court for trial instead. Lower courts may request a higher court to try a case in its place if deemed necessary (Sec. 39(2) Civil Procedure Code).

The Intermediate People's Court according to Sec. 14 No. 1 Administrative Procedure Act has jurisdiction over cases of confirming patent rights of invention and cases handled by the Customs, with the Higher People's Court hearing cases in the first instance dealing with grave and complicated issues within their jurisdiction (Sec. 16 Administrative Procedure Act) and the SPC as first instance court in grave and complicated cases having an impact on the whole country. It is important to note that administrative procedures which usually follow a decision by the Patent Re-examination Board only re-examine an administrative decision on the basis of the facts and statements introduced in the prior proceeding.

*(2) Trade marks*

In trade mark law, Rule 2(1) SPC Trade Mark Jurisdiction Rules gives jurisdiction over cases against the re-examination decisions or adjudication made by the Trade Mark Review and Adjudication Board ("TRAB") in first instance to the Intermediate People's Court designated by the Beijing Municipal Higher People's Court within its region of jurisdiction.

Jurisdiction over cases of dissatisfaction with specific administrative actions taken by the AIC pursuant Rule 2(2) SPC Trade Mark Jurisdiction Rules is determined according to the relevant provisions of the Administrative Procedure Act, i.e. Secs. 14 No. 2, 17 Administrative Procedure Act.

All other cases usually lie with the Intermediate People's Courts or above, Rule 2(3) SPC Trade Mark Jurisdiction Rules. Trade mark cases according to Rule 1 SPC Trade Mark Jurisdiction Rules include:
    -- cases of dissatisfaction with decisions of TRAB or the AIC;
    -- disputes over the ownership of right;
    -- infringement cases;
    -- disputes over contractual assignment or licences;
    -- cases of application for pre-trial interim injunctions and property and evidence preservation measures.

With the approval of the SPC, the Higher People's Courts may, if appropriate, designate one or two grass-roots Basic People's Courts of relatively large cities to hear civil trade mark disputes (Rule 2(4) SPC Trade Mark Jurisdiction Rules).

*(3) Copyright*

In copyright cases, Rule 2(1) SPC Interpretation Copyright Cases grants jurisdiction to the Intermediate People's Courts in first instance involving:
    -- cases of dispute over copyright or copyright-related rights and interests;
    -- cases of attribution of rights;

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

-- infringements;
-- contractual disputes;
-- cases of application for pre-trial cessation of acts infringing copyright or related rights and interests;
-- cases of application for pre-trial property and evidence preservation and other related cases.

As with trade mark related cases, the Higher People's Courts may, upon approval by the SPC, designate certain Basic People's Courts to hear copyright cases in first instance (Rule 2(2) SPC Interpretation Copyright Cases).

*(4) Domain names*

Concerning domain names, basically the rules which apply to territorial jurisdiction apply as well to infringing acts on the internet with domain names involved. However, under special circumstances the place of the infringement may include the location where the alleged network servers or computer terminals are located.

**(b) Territorial jurisdiction**

As regards territorial jurisdiction in civil matters, Sec. 29 Civil Procedure Code stipulates that a lawsuit can be initiated in the people's court where the infringing act took place (i.e. the place where the acts were undertaken as well as where the infringing results took place) or where the defendant has his domicile.

The various Interpretations described above enlarge and specify the general legal terms concerning territorial jurisdiction.

In patent law, Rule 5 SPC Interpretation Patent Cases defines places where infringement has occurred as places where acts such as manufacture, use, offer for sale, selling or importing of allegedly infringing products or of a patented process take place, including the places where consequences of the preceding infringing acts are evident.

Rule 4(1) SPC Interpretation Copyright Cases gives jurisdiction to the court of the place where the infringing goods are kept, seized or detained (Rule 4 SPC Interpretation Copyright Cases). Rule 4(2) defines these places as sites where infringing reproductions are stored or hidden away in large quantities on a regular basis. The places where infringing products are seized are deemed to be those where the Customs, copyright administrative department or AIC have seized or detained infringing products.

Rule 6 SPC Interpretation Trade Mark Cases carries an equivalent meaning for places where infringing goods are stored away or seized by the AIC.

**(c) Jurisdiction in respect of interim injunctions**

Concerning jurisdiction with interim injunctions, the same principles basically apply as for main actions.

**(d) Jurisdiction in actions with several defendants/several plaintiffs**

If a joint action against several defendants for infringing acts in different places of infringement is intended, the plaintiff must choose to bring the case before the competent court of one of the places where the infringing acts by the defendants occurred. Rule 6 SPC Interpretation Patent Cases covers actions against the manufacturer and/or seller of infringing products or cases involving several defendants.

If several right holders bring an action against one defendant, the people's court of the place where the defendant has committed the infringement has jurisdiction over the case.

**(e) Administrative proceedings**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

In administrative proceedings in relation to patent cases or administrative execution acts, jurisdiction lies with the court in the locality of the administrative organ that initially undertook the specific administrative act. In most cases, the courts of Beijing will have jurisdiction. In cases where an administrative decision has been reconsidered and the original decision has been amended, jurisdiction may also lie with the court in the locality of the administrative organ conducting the reconsideration (Sec. 17 Administrative Procedure Act). Between several courts the plaintiff may choose (Sec. 20 Administrative Procedure Act).

**5. Procedure in Court**

Important legislation governing court procedure are the Evidence in Civil Proceedings Several Provisions ("Evidence Provisions"), effective as of 1 April 2002.

The Evidence Provisions provide guidelines for the actual procedure during a trial. A lawsuit is initiated by filing a complaint with the court of jurisdiction. If a party is a foreigner, the power of attorney and evidence obtained or originating from abroad must be notarised and legalised. [FN57] Evidence in a foreign language must be translated into Chinese. Upon accepting the case the court serves a summons on the defendant. The defendant can then deny the claim or file a counterclaim.

*(a) General*

The length of the procedure as a whole is roughly six months for the first instance and only three months for second instance if no foreigners are involved and the case is not too complex. If the latter is the case, then the total length of the procedure of going through two instances may take up to 18 months to two years. [FN58] In China overall, only 30% of the judgments are actually appealed, and only 20% to 30% of patent cases are reversed by the higher courts. [FN59] In patent cases, validity and infringement are bifurcated, but liability and damages are usually decided at the same trial. [FN60]

*(b) Preparation*

The court first asserts whether or not it has jurisdiction. After that, the parties involved must submit relevant evidence for their claims before the hearing starts. The general principle provides that the burden of proof lies with the party who seeks to substantiate its assertions. The court must inform the parties of the burden of proof with regard to their claims, define the scope of investigation by the court and collecting evidence and issue the bearing of legal consequences if the court fails to obtain the evidence (Rule 33 Evidence Provisions).

*(c) Pre-trial hearing*

The court then may organise an exchange of evidence between the plaintiff and the defendant before a date for a hearing is set (Rule 37 Evidence Provisions). Evidence is exchanged in the presence of the judges with a protocol taken against which the opposing party may raise objection and plead his case. In this pre-trial hearing the court confirms the evidence exchanged, identifies the key issues of the case (see the declaration in Rule 39 Evidence Provisions), examines possible counterclaims, determines the witnesses and fixes the date of the hearing. The court will usually appoint a bench of three judges.

*(d) Court hearing*

The hearing is open to the public unless the case involves trade or private secrets or state secrets (Rule 48 Evidence Provisions). The bench has the power to decide whether or not the hearing is to be held openly. Sec. 124 Civil Procedure Code regulates the hearing procedure in general, including statements, witnesses, documentary evidence, reading of conclusions, debate, and final argument.

*(e) Evidence examination*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

During the hearing, the parties will be given the opportunity to cross-examine the evidence, question witnesses and debate the legal issues involved. The investigation of the case by the court is regulated in detail in the SPC provisions, comprising eight steps starting with the plaintiff reading the bill of complaint and ending with the cross-examination of the evidence, (*see* Rule 47 Evidence Provisions). Only crossexamined evidence may be taken as a basis for a judgment. Before the investigation ends the court sums up the ascertained facts. The judge must encourage the parties to concentrate on the key issues of the case without commenting on the nature of the case or the liabilities of the parties. The procedure in court itself usually lasts four hours or half a day, in complex cases such as patent matters sometimes two full days. [FN61]

### (f) Admission and verification of evidence

The SPC provisions also contain regulations on the admissibility and verification of evidence. Both are completed in the course of court hearing. To some extent, the judge is free to evaluate the evidence.

### (g) Collegial panel

The decision in IP cases is usually met by a collegial panel of three to five judges with one Chief Judge. He is usually responsible for the report on closing a case and the completion of the judgment. Before and after the hearing he must call together the panel to discuss the case and work on a decision which is theoretically met by the votes of the majority. However, in practice the other judges tend to follow the opinion of the Chief Judge without further questioning or arguing. This has led to many judgments short on legal reasoning, logic and clear terminology, [FN62] a situation that needs to be addressed by future legislation. The original idea of Chinese civil procedure law is to hand down the judgment directly after the trial has been closed, but in patent cases it normally takes one to two months (and in more complex cases maybe even three months) to receive the judgment. [FN63] Once the judgment is served, either party may appeal to the next higher court, in IP matters the Higher People's Court. The appellate court usually decides with a bench of three judges and may rehear a case.

The new Evidence Provisions provide for a clearer basis for legal procedure. However, the new system is not identical to the discovery system of common law countries since only evidence on which a party seeks to rely is introduced in the proceedings. A requirement to produce all relevant documents does not exist. [FN64]

### (h) Representation

In principle, parties can be represented in court by attorneys-at-law, patent agents or foreign attorneys. Foreign attorneys, however, can act only as citizen representatives, a role which could also be taken by any Chinese citizen. [FN65]

### (i) Licensees/right to stand

As regards all IP rights, licences do not have to be registered to take legal effect. Concerning the right to stand, e.g. in the area of patent law, on 17 December 2001 SIPO promulgated the Measures for the Administration of Recordation of Patent Exploitation Licensing Contracts, which in its Rule 6 allows licensees to file for an interim injunction together with the right holder in the case of non-exclusive licences [FN66] or even alone in the case of exclusive licensees. [FN67] The non-exclusive licensee may also sue alone with the right holder's consent. [FN68]

Rule 4(2) SPC Interpretation Trade Mark Cases makes another distinction. In infringement cases, the "exclusive licensee" according to the special terminology of the SPC (meaning "sole licensee" according to international terminology) may sue on his own behalf; the licensee of a non-exclusive licensing contract (meaning the usual exclusive licensee) may institute legal proceedings together with the trade mark registrant or may do so where the trade mark registrant does not (obviously excluding the need for consent by the trade mark registrant). The average licensee (holder of a "simple licence" according to international terminology) can only institute legal action with the express authorisation of the trade mark registrant.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

In copyright cases, organisations for collective copyright administration may institute proceedings in their own name with the authorisation of the copyright holder (Rule 6 SPC Interpretation Copyright Cases).

### (j) Suspension of lawsuits in patent cases

During a patent infringement lawsuit, the defendant usually claims invalidation of the patent concerned in an effort to suspend the proceedings. Rule 8 SPC Interpretation Patents Cases even prescribes that besides being required to produce a search report (Rules 55, 56 PAIR) in a dispute arising from infringement of a patent right for a utility model or design, a defendant, when making his defence, must file a request for invalidation of the plaintiff's patent right. Where the defendant requests suspension, he must file for invalidation of the utility model or design patent concerned within the time limit for submitting evidence (Rule 10 SPC Interpretation Patent Cases).

Where utility models and design patents are concerned, suspension is usually granted if applied for within the prescribed time limits. Suspension is not granted in any of the following cases:
   -- if no technical documentation is found in the search report produced by the plaintiff that results in the loss of novelty or inventiveness;
   -- if the defendant's evidence is sufficient to prove that his technology has been known to the public;
   -- if the proof or basis which the defendant has furnished for requesting invalidation is obviously insufficient; or
   -- in other circumstances where the court deems fit to proceed (Rule 9 SPC Interpretation Patent Cases).

Additionally, no suspension is granted in a dispute involving either an invention patent, a utility model or a design patent where the Patent Re-examination Board upon examination has upheld the patent right. In the latter case, the court must proceed (Rule 11 SPC Interpretation Patent Cases).

When the court suspends, it may at the same time, upon application by the plaintiff, decide to impose a provisional injunction for the defendant to cease and desist (Rule 12 SPC Interpretation Patent Cases). Such a decision may also involve other measures to preclude additional damages, such as a request for a security deposit. A patent right preservation order shall not last more than six months. The term is counted from the date SIPO receives the notification of assistance for execution. For an extension of the preservation order, SIPO must be notified before the term lapses. If no notification is served, the preservation of the patent right is automatically resolved and cannot be revived again (Rule 13(2) and (4) SPC Interpretation Patent Cases).

### 6. Evidence, Burden of Proof, Experts and Protection of Trade Secrets

### (a) Evidence

Evidence is exchanged in China, [FN69] but the procedure is by no means as extensive, formal or sophisticated as for example in the US or Great Britain. There are no depositions or interrogatory procedures, no real discovery and no extensive obligation to produce all files and documents of possible relevance for the case. [FN70]

Generally, all evidence submitted must be in original form and in due and enumerated form (Rule 14 Evidence Provisions). Only if originals are difficult to obtain and the court consents may copies of documents or items be introduced if they are not in dispute (Rule 10 Evidence Provisions). Evidence originating from abroad must be notarised and legalised in the country of origin before being admitted as evidence (Rule 11 Evidence Provisions). All documents in a foreign language must be translated into Chinese (Rule 12 Evidence Provisions).

The time limit for submitting the evidence must be at least 30 days (Rule 33(3) Evidence Provisions). Witnesses must be indicated to the court ten days before the submission period lapses (Rule 54 Evidence Provisions). If evidence is not submitted at all in due time, the party is deemed to have relinquished his right to fur-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

nish it. Evidence submitted after the deadline will not be taken into the court for cross-examination unless the opposing party agrees.

If the plaintiff applies for evidence preservation measures according to Sec. 74 Civil Procedure Code, he must do so within the evidence submission period and at the latest seven days before the evidence submission period lapses. The court may allow such application and demand a security. Measures to be taken may include sealing, confiscation, taking notes, taping, investigating, copying or getting an expert's opinion. The court may ask both parties or the representative of the plaintiff to be present when taking the measures (Rules 23, 24 Evidence Provisions).

Any evidence submitted must have been obtained by legal means in order to be introduced in court. [FN71] Rule 68 Evidence Provisions says that evidence obtained in a manner prejudicing the legitimate rights and interests of others or prohibited by law should not serve as a basis in legal proceedings. Evidence obtained by unlawful means may not be used in cross-examination and serve as a basis for a judgment. [FN72] However, in respect of evidence trap purchases, Rule 8(2) SPC Interpretation Copyright Cases generally allows this practice. In light of the recent decision, admission in court will depend upon the exact way evidence is collected.

If a case has already been handled by the administration before a lawsuit was initiated, the ascertained facts are not taken as a basis of a decision for the court. For example, Rule 10 SPC Trade Mark Jurisdiction Rules stipulates that where cases of dispute arising from infringement are accepted by the courts and are handled by the AIC, the court shall conduct a hearing nonetheless to ascertain the facts involved.

### (b) Burden of proof

Rule 4 Evidence Provisions stipulate that the interested parties must bear the burden of proof for the facts to support their claim or the facts to rebut the claim of the other party. Sec. 64 Civil Procedure Code reiterates the general rule which places the burden of proof on the party which submits a claim.

In the case where evidence is preserved by competent authorities and cannot be referred to without the involvement of a court, or where state secrets, trade secrets or intimate and private affairs of individuals are involved, or if the claiming party is unable to obtain proof himself for objective reasons, the party may also request the court to collect evidence on his behalf (Rule 17 Evidence Provisions). [FN73]

If it is difficult to decide the burden of proof based on the above principles, the court may, in accordance with the principles of fairness, honesty and good faith, decide who will bear the burden of proof. [FN74]

For patent disputes there are special rules regarding the burden of proof. In cases concerning patent processes, the entity or individual making the same products shall bear the burden of proof and must provide evidence that the products are made by a different process. Sec. 57 PA provides for the shift of burden in patent litigation onto the defendant, who must furnish evidence that his allegedly infringing product has been produced by a process capable of manufacturing the product at issue, that he actually has used this different process, and that this process is in fact different from the patented process.

A shift of burden of proof is also applied in respect of Sec. 52 of the new revised CA, which expressly provides that any publisher, producer or distributor of a reproduction and anyone renting a work are under obligation to pay close attention to the legitimacy of the source of reproduction they deal with in their respective business operations. In those cases, the burden of proof lies with the accused infringer regarding the legitimate source of reproduction.

Publishers and producers must prove the authorisation in respect of their publications and products, distributors and those renting must show a legitimate source of the reproductions distributed or rented (Rule 19 SPC Interpretation Copyright Cases).

Publishers are under the additional obligation of giving reasonable attention to the authorisation of the act of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

publication, source and authorship of a manuscript or content of their published works (Sec. 48 CA, Rule 20(4) SPC Interpretation Copyright Cases). The same applies to accounting books, which businessmen must keep according to the law. Refusal to hand these over or handing over false accounting books leads to the presumption that the claim of the plaintiff is tenable. [FN75]

*n(c) Experts*

In practice, especially in patent cases, calling on an expert is compulsory for a judge who has been mainly trained in legal matters rather than the complicated technical aspects of a given case. However, there is no absolute obligation for the judge to call upon an expert. Parties may apply for an expert, but, for example, in technology transfer contracts, the judge may well refuse and decide the matter himself should the facts prove not too difficult and the need for an expert is not obvious. [FN76]

Application for experts must be stated within the deadline for providing evidence (Rule 25 Evidence Provisions). If the deadline is not met or the expert's fee is not paid to the court or relevant necessary material not provided by the applicant, the applicant carries the burden of proof and will not be entitled to an expert opinion.

There are three steps to be followed in order to be able to present a valid expert's appraisal in court. If there exists a designated organisation specialising in appraisals relevant to the case, this organisation must usually be appointed. Otherwise the parties should consult with each other to agree on a suitable expert with the consent of the court. If no consent can be reached, the court will decide who to entrust with this matter (Rule 26 Evidence Provisions). In doing so, in technical matters the court may rely on the Administrative Department of Science and Technology at or above the provincial level to recommend suitable experts. Chosen experts must be disinterested in the case or be unconnected to either of the parties and may comment only on technical, not legal issues. If a party presents additional evidence in the course of the appraisal, it can be taken into account only after it has been verified as to its source and examined by the court and the other party in the hearing. [FN77]

The expert opinion may be delivered in writing. Where the court feels necessary, the expert must explain his opinion in court and may be cross-examined by the parties. [FN78]

An expert opinion may be challenged due to lack of qualification of the expert, violation of procedural rules in arriving at the opinion, an obviously faulty opinion, or the use of material facts that are an unsuitable base for the opinion (Rule 27 Evidence Provisions). [FN79] Where the opinion is incomplete, an additional opinion may be delivered.

Privately obtained expert opinions can be accepted, but may be challenged by the other side with valid reasons which must be approved by the court which will order a new expert opinion (Rule 28 Evidence Provisions). Parties may also request one or two experts to explain difficult and decisive questions to the court or question theexpert at the expense of the requesting party (Rule 61 Evidence Provisions). In fact, in many cases this may be a suitable solution, especially where cutting-edge technology is involved. [FN80]

To appoint an expert in practice has proven to be a major stumbling block for judges and parties alike. Courts feel very insecure about whom to choose and in patent cases usually resort to the Patent Office which already has examined the patent as to substance in the case of invention patents. Where the defendant raises the defence of plea for nullity of the patent, the SIPO would have to re-examine its own former decision. Due to the lack of an adequate number of suitable experts, it may prove difficult to find an acceptable one. [FN81] It is therefore advisable to present a choice of the parties beforehand [FN82] and submit sufficient evidence as to qualifications and professional experience of the suggested expert.

*(d) Protection of trade secrets*

How to handle the matter of trade secrets raised as a defence by an alleged patent infringer remains difficult in Chinese legal proceedings, especially when the defendant claims to use a new process which at the same time warrants protection as a trade secret. The general rule in Sec. 66 Civil Procedure Act prescribes that evidence

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

shall be presented in court and cross-examined by the parties. However, evidence including state secrets, trade secrets and personal privacy shall be kept confidential.

The Supreme People's Court issued judicial interpretations relating to cross-examination in 1992, laying down the guidelines empowering the People's Court to decide whether or not a secret should be presented in court session. Where it must be presented, the court session will be held *in camera*.

The problem with current legislation is that the existing statutory legislation restricts only the confidential information from being disclosed to the public, but not to the plaintiff for litigation purposes. He is, in fact, entitled to challenge the evidence involving the trade secret.

Some Chinese courts therefore have adopted confidentiality agreements obliging the parties having access to allegedly confidential parts of a process to use it for litigation purposes only and not to disclose it to third parties. [FN83] This practice has no clear legal basis and is not applied by all courts throughout the country. Additionally, there are strong controversies on the tactical use of trade secrets in patent litigation. On the one hand, the plaintiff may use his right to cross-examine to spy on opponents' trade secrets and use the information notwithstanding any court order. On the other, the defendant may claim certain information to be confidential in an attempt to avoid the burden of proof. It remains to be seen whether new regulations in the future will amend this ongoing uncertainty in practical patent litigation.

## 7. Remedies

The General Principles in Sec. 118 stipulate that copyright, patent and trade mark right holders whose rights have been infringed upon by plagiarism, alteration or imitation, may demand that the infringement be stopped, its ill effects eliminated and damages compensated. Various special legislation also contains sections dealing with remedies.

Sec. 134 General Principles serves as the basis for court decisions. [FN84] Sec. 134(2) General Principles allows confiscation of property used in carrying out illegal activities, which includes infringing goods, fake trade mark labels, materials, tools and equipment used in infringement. Additionally, fines may be imposed. Theoretically, these provisions provide for a wide range of remedies for right holders. However, except for cases of counterfeiting and passing off, only in rare circumstances will the court order the destruction of infringing goods.

### (a) Cease and desist orders

The main object of right holders in the event of infringement is to have the infringing acts cease immediately. Once an infringement is confirmed by the court, the cease and desist order is regularly sought and granted. Alongside with a cease and desist order the court may disallow further infringement if a risk of repeated infringement exists, which is the rule in IP infringement cases. [FN85]

### (b) Confiscation and destruction

Another highly effective remedy is the confiscation and/or destruction of infringing goods. The costs of destruction usually have to be borne by the infringer. [FN86] In case of patent infringement, goods of lower quality than the original goods are to be destroyed. [FN87] If the infringing goods are not of lower quality, they can, under certain circumstances, be surrendered to the right holder as damage compensation. [FN88]

In trade mark cases, Sec. 53 TA allows for confiscation and destruction by the administration, but not explicitly by the courts which would have to resort to the General Principles to order destruction of infringing goods. If the infringed trade mark is famous, Sec. 45 TAIR stipulates that where it is difficult to confiscate and destroy trade mark labels and signs themselves (because they are affixed to the goods), the goods together with the infringing labels may be destroyed. Destruction of printing or casting moulds or other tools specifically manufactured for the infringement of trade marks can be requested. After the promulgation of the new law, there was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

some uncertainty as to whether a destruction claim would be granted even where less damaging but equally effective measures were available. The State Administration of Industry and Commerce ("SAIC") in its Circular 2002 No. 254, "How to understand Sec. 53 TA in respect of related problems", allows the administration to detach infringing marks and publicly sell the goods instead of destroying them outright. Whether the courts will follow this approach is yet to be seen.

In copyright cases, the right holder can demand the infringing party to destroy books, pictures, drawings, and so on, or even film visuals, videos and the like made without consent (*see* Sec. 51 CA). Illegal income may also be confiscated by the court. Destruction claims are more easily granted by the courts since the pirated CDs and DVDs have no other legitimate use.

In the case of infringement of trade secrets, the right holder may also petition the courts to order the infringer to destroy products that have been made as a result of the unauthorised use of trade secrets, or which, should they be put on the market, could lead to the disclosure of such secrets if the right holder does not agree to proceed otherwise. In practice, courts will not order such destruction if the injured party is already manufacturing the product. [FN89]

### (c) Damages

One major drawback in the Chinese system is the very low amount of compensation usually granted. This is gradually changing due to increasing litigation activities by international right holders such as Disney, Toyota, Mitsubishi and others. [FN90] Damages are generally based on actual damages suffered by the patent holder or actual profits made by the infringer, plus reasonable investigation costs, but do not usually include attorney's fees or even punitive or treble damages. [FN91]

Chinese law does not recognise punitive damages in spite of recent legislation which allows imposing damages on infringers one to three times the illegal turnover rate. [FN92] As seen from the Chinese point of view, this does not constitute a punitive element.

Generally speaking, for damages in patent, trade mark and copyright infringement cases, three methods of calculation apply: losses suffered by the right holder, the profits directly gained by the infringer during the period of the infringement, and, if it is difficult to determine the damages in the above two ways, appropriate multiples of royalties for a licence for the right concerned. Where the third way is adopted, one to three times the usual royalties can be granted by the court. Where the court has no means to determine a royalty rate, it may determine a statutory damage from RMB 5,000 to RMB 300,000, with a limit of RMB 500,000 (EUR 50,000). These basic rules can be found in Secs. 60 PA, 56 TA and 48 CA in liaison with Rule 24 SR. The various Interpretations of the SPC define the exact mode of calculation, which may differ in details for patents, trade marks and copyright.

### (1) Investigation costs

The explicit rule in Sec. 20 UCA, which acknowledges that investigation costs in the case of unfair competition can be reimbursed, has been extended to all cases of infringement of IP rights. [FN93] Sec. 48(1) CA, Rule 22 SPC Interpretation Patent Cases and Rule 17 SPC Interpretation Trade Mark Cases now explicitly state that on the request of the right holder and according to the specific facts of each case, investigation costs may be included if reasonable. They may include reasonable travel and accommodation costs and expenditure for the purchase of the infringing party's product to be used as evidence, as well as the costs of a statement of the injured party in a newspaper to safeguard his interests. [FN94] The reimbursement of these costs is not subject to the injured party having suffered damage or the infringing party having made a profit. [FN95] Rule 17 SPC Interpretation Trade Mark Cases and Rule 26 SPC Interpretation Copyright Cases reiterate this principle and explicitly list appointed agents and collection of evidence as well as state-fixed lawyers fees (the last-mentioned only upon request and according to the specific circumstances of the case). It is important to note that in practice such reimbursement usually is not easily granted.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*(2) Court fees*

Generally, court fees depend on the damages claimed according to a formula specified in the law. [FN96] The costs for appeal are the same as for a trial in first instance. [FN97] The court fees for a trial in first instance usually range between RM 1500 and RMB 5000.

*(3) Attorneys' fees*

Attorneys' fees are negotiated by the parties based on the amount of damages and usually range from 10% to 15%. [FN98] These fees are usually not to be paid by the losing side even if the case is fully won. The SPC has allowed in Rule 17(2) of its Interpretation Trade Mark Cases and Rule 26 SPC Interpretation Copyright Cases that the court may, according to the circumstances of the case, determine that the defendant shall compensate the plaintiff a reasonable amount of attorney's fees, the standard of which as set by government agencies is very likely to be much lower than the actual costs. [FN99] Additionally, fees will only be covered if the specific circumstances of the case allow it. Although the various Interpretations of the SPC do not further elaborate on what such circumstances might be, most likely they would be acts of deliberate and wilful infringement, such as clear-cut professional counterfeiting or software pirating cases.

**(d) Fines**

Usually, fines are imposed by courts if a case represents a clear act of counterfeiting or passing off. However, only the PA contains explicit provisions on it; the TA and CA only contain comparable provisions in their Implementing Rules. [FN100] Fines can be imposed not only against infringing companies but also against the persons directly responsible. [FN101] If the court wants to impose a fine, it will be done after conferring with the Chief Judge of the court and in a separate decision which may be challenged on its own by the defendant within ten days. During the review the fine will not be enforced. [FN102]

In patent cases, Rule 19 SPC Interpretation Patent Cases for cases of counterfeiting refers to Sec. 58 PA which allows for fines up to three times of the illegal income; if no income has been obtained, fines up to RMB 50,000 can be imposed. The same limit for statutory damages is valid for passing off a patent (Sec. 59 PA).

In trade mark cases, Rule 21 SPC Interpretation Trade Mark Cases allows the court in all cases of infringement to impose a fine and refers to Rule 42 TAIR. This provision refers to fines imposed by the administration according to Secs. 45, 48 TA [FN103] and stipulates fines up to 20% of the illegal turnover rate or double the illegal profit and 10% of the illegal turnover rate in the case of Rule 42(2) TAIR.

In copyright cases, Rule 29 SPC Interpretation Copyright Cases gives the copyright administrative authorities the right to impose a fine of not more than three times the amount of illegal turnover rate. Where the turnover is difficult to determine, a fine of no more than RMB 100,000 may be imposed, which is twice the amount in patent law. In software infringement cases, Rule 24 SR stipulates a fine of RMB 100 per infringing item for illegally duplicating software, distributing, renting, communicating to the public on a network, or an amount of no more than five times the value the of goods. Where software with technological measures to protect it is intentionally circumvented or destroyed or electronic right management information is intentionally deleted or altered or the software of another is assigned or licensed, a fine of no more than RMB 50,000 may be imposed.

**(e) Public apology**

As part of the elimination of ill effects, the infringing party must issue a declaration in which he admits the infringement committed and promises not to commit further infringements. According to case law, the elimination of ill effect primarily takes place in the form of a public apology in newspapers at the expense of the infringing party. The content of the apology must be approved by the court. If the injured party has not suffered serious damages this specific claim very often is not granted. [FN104] If a party ordered to make the public apology does not do so, the court can publish the main contents of the decision in a newspaper at the expense of the infringing party. [FN105]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Interestingly enough, Chinese law makes a distinction between above-described public apology as elimination of ill effects and a apology such as that mentioned in Sec. 120 General Principles (infringement of right of portrait, right of name or honour). The use of such an apology is meant to ease tension between the parties and facilitate the settlement of a dispute. It is more common in cases of infringement of personality rights and may therefore occur in cases of infringement of rights of authorship. [FN106]

The right to demand a public apology is contained in the CA. This is not the case with the PA and TA. Recent remarks by relevant officials within the Chinese People's Courts indicate that future Interpretations by the SPC might exclude such a right for patent infringement proceedings.

### (f) Executing a decision

The enforcement of civil judgments which have entered into force is regulated in Secs. 207 *et seq*. Civil Procedure Code. Enforcement is carried out by the courts that tried the cases in first instance. The people's courts all have enforcement bodies to execute the enforcement provisions of the judgments and court orders that have become legally effective, the arbitration awards made by China's arbitration bodies and the legally effective judgments of foreign courts which are recognised by the Chinese courts (*see* Sec. 209(3) Civil Procedure Code).

For the enforcement of arbitration awards or notarised documents of obligation together with a compulsory enforcement by the notary public office, the competent court is at the domicile of the party subject to the enforcement procedure or at the location of property owned by this party. [FN107] The enforcement procedure is initiated only where a party concerned fails to perform its contractual duties in spite of being capable of doing so. [FN108]

## 8. Preliminary Measures

The Chinese Civil Procedure Code in Secs. 92 *et seq*. does not recognise the institution of the interim injunction as it is defined in other jurisdictions. The law provides two special types of pre-trial procedural measures, the anticipated enforcement (*xianyu zhixing*) and the freezing of assets (*caichan baoquan*). [FN109]

To obtain a provisional measure from the court a bond must usually be placed (Sec. 98(2) Civil Procedure Code). Anticipated enforcement according to the Civil Procedure Code in IP cases requires that the plaintiff can convincingly show that the possibility of an infringement by the defendant exists and that the plaintiff would suffer considerable damage without anticipated enforcement. [FN110] Although theoretically *ex parte* applications without a hearing before the issuing of such orders are possible according to the law and reportedly in practice have been applied, [FN111] it is rather difficult for a right holder to have the actual advantage of surprise over the defendant after a notice of the original lawsuit has been served to him.

According to Sec. 92 Civil Procedure Code, in cases where circumstances could make the enforcement of a decision difficult or impossible, the court may issue a freezing order. It is up to the court to decide whether the party applying for such an order must post a bond or not (Sec. 92(2) Civil Procedure Code). Once the court has received an application, it must make a decision within 48 hours. If an order is granted, enforcement must begin immediately (Sec. 92(3) Civil Procedure Code).

Sec. 99 Civil Procedure Code allows the parties concerned to appeal against the decision of a court to issue a freezing order or start enforcement.

Before the amendment of the IP laws it was virtually impossible for IP right holders to obtain interim injunctions. Preliminary injunctions according to Secs. 97, 98 Civil Procedure Code require a clear-cut relationship between the parties, which is nearly never the case in infringement proceedings. An *ex parte* application was also not possible since the application for such measure required the previous filing for a lawsuit which deprived the plaintiff of the surprise effect. Property preservation proved difficult due to the necessity to assess the required security and the possibility for the infringer to post a bond himself to resolve the freezing of his assets

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(Sec. 95 Civil Procedure Code).

After the revision of the relevant IP-related laws, all statutes contain special provisions citing interim injunctions *expressis verbis*. Additionally, the SPC has issued two special sets of regulations regulating pre-trial measures and evidence preservation, the Several Provisions of the SPC for the Application of Law for Stopping Infringement of Patent Rights before Instituting Legal Proceedings ("SPC Interpretation Interim Injunctions Patents"), adopted on 5 June 2001 and in force since then. In trade mark law, the Interpretation by the Supreme People's Court of the Issues Relating to the Application of Law to Pre-trial Suspension of Acts of Infringement of Trade Marks and to Evidence Preservation ("SPC Interpretation Interim Injunction Trade Marks"), adopted on 25 December 2001 and entered into force on 22 January 2002 is concurrently applicable in copyright cases.

### (a) Right to apply

Besides the right holder and his successor in title, the exclusive and sole licensee generally may apply for an interim injunction on his own if the right holder takes no action against infringing activities. Simple licensees cannot apply for such measures without the written consent of the right holder.

### (b) Procedure

The application must be in written form and in Chinese. The court may not grant more than what has been applied for, e.g. see Rule 5 SPC Interpretation Interim Injunction Patents. The application must contain the specific statement that irremediable damage will be caused to the legitimate rights and interests of the applicant if the relevant act is not stopped immediately (Rule 3 SPC Interpretation Interim Injunctions Patent Rights). When applying, the usual court fees according to the Civil Procedure Code must be paid.

### (c) Evidence

The applicant must submit documents proving the authenticity and validity of his right, including valid certificates, claims, description, receipt of payment of the annual patent fee and, in case of utility models, a search report by SIPO (Rule 4(1) SPC Interpretation Interim Injunctions Patents). An interested party must also submit the patent licensing contract and the proof for filing the contract with SIPO (Rule 4(2) SPC Interpretation Interim Injunctions Patents). If he does not have this proof, he must submit the certificate of the patentee or other evidence that proves that he enjoys the right. Sole licensees must submit proof that the patentee does not want to file himself for the injunction. Heirs must also prove their legal status. Most notably, the applicant must submit evidence that proves that the respondent is committing or about to commit an act of infringement, including the allegedly infringing product and technical features of the patented technology as well as of the allegedly infringing product (Rule 4 SPC Interpretation Interim Injunction Patents).

### (d) Undertaking

According to Rule 6 SPC Interpretation Interim Injunctions Patents, a guaranty in the form of a valid pledge or hypothecation must be provided, otherwise the application will be rejected. [FN112] The necessary amount of the guaranty is determined by the court, taking into account the sales of the product in question, the reasonable costs of storage and stock-keeping, the losses that may be caused to the opponent and other reasonable costs such as wages (Rule 6 SPC Interpretation Interim Injunction Patents). Even if an injunction is granted and then executed, where in the process of execution the opponent suffers even greater losses than originally assumed by the court due to the adoption of the measure, the court may ask for an additional surety and resolve the measure if this demand is not met in due time (Rule 7 SPC Interpretation Interim Injunction Patents).

### (e) No cross undertaking

As the most important difference to injunctions granted only on the basis of the Civil Procedure Code, Rule 8 SPC Interpretation Interim Injunction Patents stipulates that any measure taken to execute the ruling of the court to stop the act of infringement will not be stopped because the party against which the application has been filed

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

provides a counter-guaranty.

### (f) Swift decision: 48 hour rule/ex parte application

When all necessary documents have been submitted, the court must decide within 48 hours and the order must be carried out without delay. Within this time span, the court may verify the facts, summon and consult with one or both parties and then make a decision which the other party is informed of within five days at the latest (Rule 9 SPC Interpretation Interim Injunction Patents). The wording of the provisions shows that an application can be made *ex parte* if the court does not find it necessary to consult the other side. When deciding, the court must consider whether the alleged or feared act actually is an infringement, whether not taking the advised measure will bring irremediable harm to the rights of the applicant, the content of the information relating to the applicant's provided guaranty, and whether or not ordering the other party to cease the relevant act would be damaging to public interest (Rule 11 SPC Interpretation Interim Injunction Patents). Where the applicant institutes legal proceedings against patent infringement and simultaneously requests enjoining an act of patent infringement in advance, the court may first make the ruling on the request which prevents dilatory tactics in proceedings (Rule 17 SPC Interpretation Interim Injunction Patents).

### (g) Main action

The applicant must initiate legal proceedings within 15 days after the court takes measures to stop the relevant act. If no lawsuit is filed, the measure will be removed (Rule 12 SPC Interpretation Interim Injunction Patents). Otherwise the ruling of the court generally remains effective until the final legal instrument has come into effect. The court may deviate from that and order a deadline for the effectiveness of the measure. It may also prolong this deadline after the expiration of the time limit on the request of the interested party (Rule 14 SPC Interpretation Interim Injunction Patents).

### (h) Remedies

If the applicant is not satisfied with the decision of the court, he may apply for reconsideration within 10 days from the date of receipt of the ruling. The execution of the ruling is not suspended during reconsideration (Rule 10 SPC Interpretation Interim Injunction Patents).

The party against which the application is filed may, if the right holder does not start legal proceedings as stipulated or if there is an error in the application and losses are caused, initiate legal proceedings with the competent court requesting damage compensation.

### (i) Evidence preservation

When executing pre-litigation measures to stop allegedly infringing acts, the court may upon application simultaneously preserve the evidence (Sec. 74 Civil Procedure Code and Rule 16(1) SPC Interpretation Interim Injunction Patents) or even freeze assets (Rule 16(2) SPC Interpretation Interim Injunction Patents and Secs. 92, 93 Civil Procedure Code). The requirements for such a measure are therefore as high as for an interim cease and desist order.

Sec. 57 TA, Sec. 50 CA, Rule 27 SR and the special judicial interpretations of the Supreme People's Court described above cover pre-trial evidence preservation. Parties may apply for such measures in cases where evidence is most likely to be difficult to recover because of the great likelihood that upon initiating the action it will be destroyed or hidden. The courts may ask experts to look into the case before deciding.

### 9. Limitation

Limitation in Chinese law does not link limitation to the claim but to the procedural action initiated by a right holder in the courts after awareness of infringement. Sec. 135 General Principles provides for the general limitation period to claim a civil right of two years from the date the right holder has known or has reason to know

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

about the infringement. Sending a warning letter to an infringer may well serve as a basis for determining the knowledge of the right holder. Sec. 62 PA and Rule 23 SPC Interpretation Patent Cases reiterate the two-year time limit. In ongoing infringement actions, rulings of the court concerning damages will therefore be computed from two years before the date the right holder instituted legal proceedings.

[FN10]. Chen Yongshun in an interview with Catherine Sun, *The China IP Focus* 2003, 18.

[FN11]. *Gazette of the Standing Committee of the NPC* 1991 No. 3, 8; English translation in <www.qis.net/chinalaw>.

[FN12]. Dong Wei, *China Patents & Trademarks* 2001 No. 4, 30 *et seq.*

[FN13]. Chen Yongshun (above note 10), 18.

[FN14]. It seems that in the future specific guidelines will be issued by the SPC -- at least for patent matters. These new guidelines discussed in October 2003 foresee that a declaratory non-infringement action shall only be admissible if a warning letter has been issued or after the alleged infringer has asked the patent right holder whether he deems a specific behaviour to be infringing.

[FN15]. *See* the Measures for Fee-Collecting in the People's Courts promulgated by the SPC on 29 June 1989.

[FN16]. Yang Xiaoguang, *The China IP Focus* 2003, 67; The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 14.

[FN17]. Yang Xiaoguang, *The China IP Focus* 2003, 67.

[FN18]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 4.

[FN19]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 3.

[FN20]. Susan Finder, *Doing Business in China*, Freshfields 2002 Vol. 1, Court system § 2.1.02[05].

[FN21]. Yang Xiaoguang, *The China IP Focus* 2003, 67.

[FN22]. Susan Finder (above note 20), § 2.1.02[03].

[FN23]. Johnson Tan, *China Law & Practice* April 2003, 25. When in doubt, the final decision is met by the SPC. *See* the Notice Concerning the Handling of Foreign and Foreign-Related Arbitration, issued on 28 August 1995 by the SPC.

[FN24]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 2.

[FN25]. *See Heilongjiangsheng Jianshe Shejiyuan v. Hubeisheng Mianhua Gongsi, Hubeisheng Mianhua Gongsi Rangfan Zhongchuan Chubeiku and Wuhanshi Gongye Daxue Shejiyuan*, decided by the Supreme People's Court, Case Number (1998) *Zhijianzi* No. 37, in the case study "Zuigao Renmin Fayuan zhishi chanquan panli pingjie" ("Commentary on IP Decisions Made by the SPC"), Jiang Zhipei (ed.), *Beijing Zhishi Chanquan Chubanshe* 2001, 523, and the case "ZL-9 Multifunction Metal Treatment Fluid" ("ZL-9 Duogongneng Jinshu Chuliye") *Jingzhi Zi* No. 5, *ibid.* 527.

[FN26]. Resolution of the NPC Standing Committee Providing an Improved Interpretation of Law, issued 10 June 1981; The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 2.

[FN27]. Susan Finder (above note 20), § 2.1.02.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN28]. Susan Finder (above note 20), § 2.1.03.

[FN29]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 6, 7.

[FN30]. This is to guarantee the dual leadership, meaning the local Communist Party Committee and government is in charge in matters of organisation and personnel, the hierarchical central organ and superiors lead in substantive questions: Susan Finder (above note 20) § 2.1.03[1].

[FN31]. Susan Finder (above note 20) § 2.1.03[2].

[FN32]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 7 *et seq.*

[FN33]. *See also* the PRC Organisational Law of the Local People's Congresses and Local People's Governments, first promulgated on 4 July 1970, third amendment as of 28 February 1995, as well as the SPC Opinion Concerning the Acceptance of Supervision of the People's Courts by the People's Congresses and the Standing Committee of the People's Congresses, issued on 24 December 1998.

[FN34]. Rule 10 Regulations of the Standing Committee of the Shanghai Municipal People's Congress on the Supervision of Judicial Work, issued on 14 March 1999.

[FN35]. Susan Finder (above note 20) § 2.1.07.

[FN36]. Chen Wang, *Copyright* February 2002 Vol. 16, 23.

[FN37]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 10.

[FN38]. Susan Finder (above note 20), § 2.1.05[1].

[FN39]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 13.

[FN40]. More often than not, the Committee is held even before a trial has been conducted. The judges decide the case without having read the files; instead, a report from a judge in charge is delivered without personal review of the files by the other members of the Judicial Committee.

[FN41]. Susan Finder (above note 20), § 2.1.05[3].

[FN42]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 16.

[FN43]. Jurisdiction of Foreign-Related Civil and Commercial Cases, issued by the SPC on 25 December 2001.

[FN44]. Johnson Tan, *China Law & Practice* April 2003, 26.

[FN45]. Johnson Tan, *China Law & Practice* April 2003, 24.

[FN46]. Johnson Tan, *China Law & Practice* April 2003, 26.

[FN47]. Ye Yonglu, "Zhishi chanquan susong shiwu" ("IP Litigation Practice"), *Guangdong jingji chubanshe* May 2002, 34 *et seq.*

[FN48]. Interestingly, the Beijing Municipal Higher People's Court also issued Explanations for IP matters which play an important role in practice. On 23 December 2003 the Explanations of Several Issues Relating to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Trial of Cases of IP Disputes were issued, *see China Patents & Trademarks* 2003 No. 4, 97. Recently, there was another important Circular entitled Answers by the Beijing Municipal Higher People's Court to Several Questions Relating to the Application of Law to Foreign-Related Civil IP Cases, *see China Patents & Trademarks* 2004 No. 3, 97.

[FN49]. *Gazette of the SPC* 2001 No. 4, 130; English translation in < www.cpahkltd.com/Archives/Several_Provisions2.html>.

[FN50]. Above note 6.

[FN51]. *Gazette of the SPC* 2002, 35; English translation in *China Patents & Trademarks* 2002 No. 2, 88, <www.lehmanlaw.com/lib/library/Laws_ regulations/IP/inter_scope_tr.htm>.

[FN52]. Above note 7.

[FN53]. *China Patents & Trademarks* 2004 No. 3, 93.

Note 54. *China Patents & Trademarks* 2001 No. 4, 94.

[FN55]. *Gazette of the SPC* 2001 No. 4, 133; English translation: *China Patents & Trademarks* 2001 No. 4, 94; <www.lehmanlaw.com/lib/library/IT.htm>.

[FN56]. For details for all the provinces *see* Ye Yonglu (above note 47), 283 *et seq.*; Li Yong, *The China IP Focus* 2003, 55, citing the standard in Beijing at RMB 80,000,000 (equivalent to EUR 8,000,000).

[FN57]. A more than cumbersome process: usually after having obtained the notarisation in the home country, the signature of the notary has to be authenticated by his supervising competent government authority whose authentication in turn must be authenticated by its supervising body. The authentication process is taken in a series up to the highest governmental body whose authentication finally must be legalised with the Chinese consulate or embassy in one's home country. Such a process may take several weeks and may require substantial amounts of time and money.

[FN58]. Chen Yongshun (above note 10), 16.

[FN59]. Chen Yongshun (above note 10), 17.

[FN60]. Chen Yongshun (above note 10), 18.

[FN61]. Chen Yongshun (above note 10), 16.

[FN62]. For more details *see Zhou Lin, China Patents & Trademarks* 2003 No. 3, 7, 8.

[FN63]. Chen Yongshun (above note 10), 16.

[FN64]. Zhou Lin, *China Patents & Trademarks* 2002 No. 3, 6 *et seq.*; Chua Eu Jin, *China Law & Practice* November 2002, 41 *et seq.*

[FN65]. Chen Yongshun (above note 10), 16.

[FN66]. Or alternatively, if the patentee refuses to take action. This may be difficult to prove in court when challenged by the other side if the patentee gives no reason for his inaction.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN67]. Chi Shaojie, *China Patents & Trademarks* 2003 No. 1, 73.

[FN68]. Chen Yongshun (above note 10), 16.

[FN69]. Chua Eu Jin, *China Law & Practice* November 2002, 42.

[FN70]. Chen Yongshun (above note 10), 18.

[FN71]. Yang Xiaoguang, *The China IP Focus* 2003, 67.

[FN72]. *Beijing Founder Group Corp. v. Beijing Gaoshu Tianli Science & Technology Co. Ltd. and Beijing Gaoshu Science and Technology Co. Ltd.*, Beijing Higher People's Court Judgment *Gaomingzhongzi* 194/2002; Yang Xiaoguang, *The China IP Focus* 2003, 71.

[FN73]. Chua Eu Jin, *China Law & Practice* November 2002, 42.

[FN74]. Li Yong, *The China IP Focus* 2003, 56.

[FN75]. Jiang Zhipei, *China Patents & Trademarks* 2002 No. 2, 6.

[FN76]. *Wuhan Huagong Xueyuan v. Shandongsheng Taianshi Jiaoqu Fuli Huagongchang*, Case No. (1999) *Zhizong Zi* No. 20, SPC Case Study, 120.

[FN77]. Jiang Zhipei, *China Patents & Trademarks* 2002 No. 2, 6.

[FN78]. Wang Tong/Hu Zhenyuan, *Zhishi Chanquan* 2003 No. 2, 43.

[FN79]. In practice, this seems to almost never happen, *see* Wang Tong/Hu Zhenyuan, *Zhishi Chanquan* 2003 No. 2, 42. If there is a disagreement, the court will invite two additional experts, one from each party, and discuss all three opinions together with the parties before taking the expert's opinions as the basis for the court's decision.

[FN80]. Wang Tong/Hu Zhenyuan, *Zhishi Chanquan* 2003 No. 2, 42.

[FN81]. *Ibid.*

[FN82]. Experts appointed by the parties must be consented to by both of them, Chen Yongshun (above note 10), 18.

[FN83]. *Wu Yuhe, China Patents & Trademarks* 2002 No. 2, 21.

[FN84]. Jiang Zhipei, *Zhongguo Shangbiao Baogao* 2003 Vol. 1, 324.

[FN85]. Liu Xiaohai, 32 IIC 148 [2001].

[FN86]. Liu Xiaohai, 32 IIC 151 [2001].

[FN87]. Liu Xiaohai, 32 IIC 150 [2001].

[FN88]. *Ibid.*

[FN89]. Liu Xiaohai, 32 IIC 151 [2001].

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN90]. CPT 2002 No. 1, 76 with two cases with higher damage awards.

[FN91]. Chen Yongshun (above note 10), 18.

[FN92]. Liu Xiaohai, 32 IIC 158 [2001] referring to Sec. 49 Consumer Protection Act.

[FN93]. Liu Xiaohai, 32 IIC 156 [2001].

[FN94]. Intermediate People's Court of Nanjing, *Gazette of the SPC* 1998, 70.

[FN95]. Liu Xiaohai, 32 IIC 156 [2001].

[FN96]. *See* the People's Courts Measures for the Collection of Procedural Fees, promulgated on 29 June 1989 and in force since 1 September 1989.

[FN97]. Chen Yongshun (above note 10), 17.

[FN98]. Chen Yongshun (above note 10), 16.

[FN99]. Ran Ruixie/Zee Wai-Bui, *China Law & Practice* Dec. 2002/Jan. 2003, 28. Attorney's fees are similar to Western countries and may reach several thousand euros for a trial in first instance.

[FN100]. Sec. 58 PA, Rules 42 TAIR, 36 CAIR.

[FN101]. Liu Xiaohai, 32 IIC 160 [2001].

[FN102]. Jiang Zhipei, *Zhongguo Shangbiao Baogao* 2003 Vol. 1, 324.

[FN103]. These provisions only protect the public interest against inferior goods labelled with registered misleading or unregistered trade marks and not the individual right holder.

[FN104]. No. 1 Intermediate People's Court of Beijing, *Gazette of the SPC* 1995, 101 *et seq.*

[FN105]. No. 1 Intermediate People's Court of Beijing, *China Patents & Trademarks* 1997 No. 4, 87 *et seq.*

[FN106]. Liu Xiaohai, 32 IIC 153 [2001].

[FN107]. The People's Courts of the PRC, *Foreign Affair Bureau of the SPC of the PRC*, 1995, 26.

[FN108]. *Ibid.*

[FN109]. Gao Lulin, *Zhishi Chanquan* 2003 No. 1, 16.

[FN110]. Liu Xiaohai, 32 IIC 145 [2001].

[FN111]. *See* the cited decision of the Intermediate People's Court Shanghai in Liu Lu/Gao Yan, *Minshi Susongfa lijie shiyong yu anli pingxi*, Beijing 1996, 336.

[FN112]. Ye Yonglu (above note 47), 220.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

INPLC S E II

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.