UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL NO. 1:12-CV-00967

RF MICRO DEVICES, INC.,

        Plaintiff,

   v.

JIMMY S. XIANG, XIAOHANG DU,
FENG WANG and VANCHIP
TECHNOLOGIES LTD.,

        Defendants.

**REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY,**

**OR FOR A MORE DEFINITE STATEMENT**

Defendants file this Reply in support of their Motion [Doc. 34] and Brief [Doc. 35] ("Brief") to address six issues from the opposition brief ("Opposition") [Doc. 37].

## I. This is a China-Centered Dispute with Parallel Pending Cases.

RFMD attempts in the Opposition to downplay this dispute's focus upon China, but this litigation is primarily about events which occurred and are occurring in China, and it is substantially the same as the China lawsuit RFMD filed first.

In both the US and Chinese Complaints, RFMD claims that the defendants took certain unspecified trade secrets and provided them to the Vanchip entities in China in order to set up a business which would design and sell in China "knock-off" semiconductor chips, all causing harm to RFMD's Chinese sales. *See* Brief at 2-4, 7-8 (citations omitted). RFMD does not identify the "secrets" or where the "taking" occurred, although RFMD alleges that the unidentified secrets ended up in the Chinese chips and Chinese patent applications, and that Mr. Xiang, at least, worked in China for RFMD and presumably obtained the unidentified secrets while in China.

Since the events and operations targeted by RFMD are in China and since RFMD has substantial operations in China, it is no surprise that China is the forum closest to the evidence. At least sixteen (16) third party witnesses are in China, along with their likely documents, Brief at 10-11; whereas no third party witnesses and no third party documents in America have been identified. RFMD also seeks to have the ownership of Chinese patent applications transferred to it. Such a transfer will involve Chinese law, the Chinese Patent Office and the Chinese companies which actually own the patent

applications and who are indispensable parties for a transfer (and whose absence requires dismissal under Rules 12(b)(7) and 19(b)).

In both cases, RFMD claims trade secret theft, copying and plagiarism of data sheets, and conversion of intellectual property, all in violation of the individuals' confidentiality agreements. Brief at 7-8 (citations omitted). And, RFMD seeks in both cases the same types of relief - injunctive relief and damages. The Chinese case even has a more comprehensive roster of defendants in that it includes the Chinese Vanchip companies which own the patents in question and sell the chips targeted by RFMD.

RFMD asserts that the China and NC cases are not parallel because of variances in the parties and claims (allegedly). Both contentions are erroneous.

The standard for whether cases are parallel is whether the parties and issues are substantially the same, not whether they are identical. *See* Brief at pp. 5-6 (citations omitted); *see also Al-Abood v. El Shamari*, 217 F.3d 225, 232 (4th Cir. 2000). The Fourth Circuit made this clear, stating that the "absence of this one party [Western Cedar Roofs] does not defeat the parallel nature of the lawsuits." *Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182, 187 (4th Cir. 2001); *see Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992); *compare Microban Prods. Co. v. Microban Canada, Inc.*, 2011 U.S. Dist. LEXIS 7663, *12-13 (W.D.N.C. Jan. 26, 2011).

The Opposition argues that Mr. Wang and the dissolved North Carolina company are not defendants in China, rendering the cases not parallel. This distinction does not change that the parties and issues are substantially the same. Both cases are clearly

- 2 -

centered upon the "knock-off" chips and whether the Vanchip companies have used the alleged trade secrets, incorporated RFMD's intellectual property in the Chinese patent applications, and copied data sheets. Mr. Wang is tertiary to the cases, and the NC entity is dissolved.[1] RFMD's own allegations are that Mr. Wang was laid off from RFMD two years before alleged "simultaneous departures" of Mr. Xiang and Mr. Du, touted in the first paragraph of the Complaint as being "no coincidence." *See* Doc. 1 ¶¶ 1 & 37. Two years removed from RFMD and its technology, Mr. Wang allegedly "worked remotely in support of Vanchip's Chinese operations." Doc. 1 ¶ 7. RFMD does not even assert any title for Mr. Wang at the Chinese Vanchip companies (in contrast to what is alleged for Mr. Xiang (Supervisor) and Mr. Du (Executive Director). *See* Brief at 9. RFMD offers no factual justification for its conclusion in its Opposition that Mr. Wang played a "central role" other than that, like Mr. Xiang and Mr. Du, he signed a confidentiality contract. Opposition at 6.[2] That does not support RFMD's conclusion, and its Complaints demonstrate otherwise.

*Microban* is distinguishable. The plaintiff in *Microban* alleged a breach of contract seeking money damages against the defendant. The parties in the federal lawsuit

---

[1] RFMD asserts in its brief, but not the Complaint, that testing of the "knock-off" Vanchip products was primarily done in North Carolina. Opposition at 14. RFMD has no basis for this statement.

[2] RFMD asserts that the Chinese courts "do not have personal jurisdiction over" Mr. Wang or the dissolved company. Opposition at 5. RFMD has not cited any authority for this claim; jurisdiction over Mr. Wang has not been denied by the Chinese court; and the claim about Mr. Wang seems quite unlikely given Mr. Wang's work in connection with the Chinese Vanchip companies. In any event, Mr. Wang and the company are willing to consent to the Chinese court's jurisdiction conditional upon and concomitantly with the dismissal of this case.

were codefendants in a Canadian action brought by a third party, for declaratory and injunctive relief, and in which the *Microban* plaintiff could not assert its breach of contract claim. Abstention was therefore denied. 2011 U.S. Dist. LEXIS 7663 at *13. In contrast, RFMD has asserted the same types of claims and seeks the same types of relief in both cases.

*New Beckley* is also distinguishable. *See New Beckley Mining Corp. v. International Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991). In *New Beckley*, a company sued a union in state court seeking only equitable relief to stop violence and harassment related to a mining strike, and later sued more broadly in federal court for compensation and equitable relief asserting tortious interference, destruction of property and RICO violations. Unlike our case, the *New Beckley* federal case arose out of broader and different issues and sought different types of relief.

*McLaughlin v. United Virginia Bank* is also distinguishable on its facts. 955 F.2d 930, 935-36 (4th Cir. 1992). By the time the case was reversed on appeal, several of the previous ten state court cases were no longer pending and the issues and claims in the cases remaining were sufficiently different from the claims in the federal case so as to reverse abstention. Even so, the Fourth Circuit suggested that the district court assess whether an equitable stay was appropriate. *Id.* at 936.

The Opposition also asserts that the Chinese Lawsuit does not contain claims for copyright infringement or breach of contracts. This assertion contrasts with RFMD's "Indictment" (i.e. civil complaint) filed in China. In it, RFMD alleges "copying and

plagiarism" of product specifications and that the actions were in violation of the contracts. Brief at 7-8 (citations omitted). RFMD has not cited any support for its claim that breach of contract claims lack precedent or otherwise cannot be asserted in China, and a similar contention was rejected in *Huang v. Advanced Battery Tech., Inc.*, 2010 U.S. Dist. LEXIS 51694, *19-20 (S.D.N.Y. May 26, 2010) (discussing whether Chinese courts could adjudicate breach of contract claims). Thus, the same issues and facts form the basis of both cases, and RFMD seeks the same types of relief - damages and injunctions - in both cases. They are parallel and abstention is proper.

## II. Abstention is Merited.

This Reply is too short to cover how each of RFMD's claims about the abstention factors is incorrect or incomplete, but two points stand out. First, RFMD's assertion that there is no property over which China may assume jurisdiction to the exclusion of others fails to address the fact that RFMD seeks transfer in this case of Chinese patents governed by Chinese law and owned by the Chinese Tianjin Vanchip company.

Second, the two cases are not at the same posture and pace. The Shanghai court took the extraordinary step of ordering the seizure of Vanchip company bank accounts and then executing upon the order, seizing approximately $125,000 in funds. *See* Doc. 29 at ¶ 12-14. The Defendants have expressly denied RFMD's claims. *See* Ex. 1 (translation of copy of Chinese Answer); *c.f.* Opposition at 2. And, although the Chinese hearing date set for October 31 has been recently delayed at RFMD's request, the

Chinese case is headed towards a hearing at the end of 2012 or early 2013. In contrast, this case is in its infancy and jurisdiction is disputed. Abstention is strongly favored.

### III. Discovery Occurs By Another Name and Process in China.

RFMD denigrates the Chinese forum as "inadequate" and claims that there is no "discovery" in Chinese civil lawsuits, rendering the Chinese lawsuit "inconvenient." In contrast, the US Supreme Court and other courts have found the Chinese forum to be an adequate forum when dismissing due to *forum non conveniens*. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) ("textbook case for immediate *forum non conveniens* dismissal" in favor of Chinese case); *Huang v. Advanced Battery Tech., Inc.*, 2010 U.S. Dist. LEXIS 51694, *16 (S.D.N.Y. May 26, 2010) ("a Chinese court is an adequate alternative forum for the purposes of this contract and tort action").

RFMD cites no support for its claim that procedural "inconvenience" from any claimed lack of discovery is a sufficient justification either to refuse to abstain or to tip the *forum non conveniens* analysis. Indeed, the rationale for abstention is not that the other forum will replicate American procedures (as it never will), but that considerations of comity, conservation of resources and avoiding piecemeal adjudication are paramount.

More directly and contrary to RFMD's assertion that China lacks "discovery," Chinese courts have procedures through which the goal of exchanging and collecting evidence (from each other and third parties) is satisfied. Although the Chinese courts do not use the moniker "discovery," it exists in different forms. Among other procedures, the Chinese Court "may upon one party's application, arrange [for an] evidence exchange

before [the] hearing deciding [the] case." Ex. 2, Martindale-Hubbell Law Digest, 1 People's Republic of China Law Digest, Civil Actions and Procedure (2010) ("*China Digest*") § 5.07; *see also* Ex. 3, *Some Provisions of the Supreme People's Court on Evidence in Civil Procedures* (2001) ("*China Evidence Rules*") at Article 37. Further, akin to a US subpoena, if a party cannot independently collect evidence, for example from third parties, due to objective reasons, the party may request that the Chinese Court collect the evidence. *See* Ex. 2, *China Digest* § 5.07 ("one party may file application with the court to obtain evidence, such as: . . . (iii) evidence parties themselves cannot obtain owing to objective reasons"); *see* Ex. 3, *China Evidence Rules* at Articles 3 & 17. Thus, discovery occurs, under other names and in an inquisitorial model.[3]

Finally, even if the Chinese forum was somehow inferior procedurally or substantively, RFMD chose it. RFMD elected to file first in China. RFMD has not dismissed or abandoned its case; rather RFMD is benefiting from it. Consequently, RFMD's comments about the Chinese forum do not favor denial of the motion.

### IV. RFMD Does not Claim Burden to Itself by Proceeding In China.

RFMD claims neither personal inconvenience nor evidentiary inconvenience to litigating in China. Indeed, RFMD's sales are mainly in China, it has substantial operations there, its alleged damages are in China, and it sued first in China.

---

[3] Proceedings without discovery are not alien to the United States. Some arbitrations and government administrative proceedings in America have no or limited discovery. The American Arbitration Association (AAA) even has rules for arbitrations with "Expedited Procedures" in which there are no interrogatories, no requests for admissions, no depositions, and only an exchange of exhibits. *See* Ex. 4 at 11-12.

- 7 -

RFMD has not identified any likely third party witnesses or documents located in North Carolina (or America). In contrast, the only likely third-party witnesses cited so far are the sixteen (16) persons and companies in China (and Hong Kong) identified previously by Defendants and mentioned in RFMD's own Complaint. *See China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F.Supp.2d 1106, 1110-11 (N.D. Ohio. 2000) ("balance tilts sharply in favor of adjudicating this matter in a Chinese forum" when "most of evidence and witnesses are located in China"). It would be very inconvenient, to say the least, to try to obtain testimony from these persons for use in North Carolina case. It will be impossible to compel them to testify at trial in North Carolina. Even if they were willing to travel voluntarily, they may not be able to obtain timely US visas to travel to the United States! *See Yung v. Integrated Transp. Network Grp., Inc.*, 2001 U.S. Dist. LEXIS 24715, *47 n.7 (S.D.N.Y. Sept. 4, 2001) (discussing visa difficulties for 13 witnesses in China, travel costs, and recommending dismissal due to *forum non conveniens*). Their absence would materially harm the Defendants' case.

Further, documents relevant to this case are likely held by the Vanchip companies in China and written in Chinese. Indeed, a focus of this case will likely be a comparison of the power amplification chips and operations of the Vanchip companies against the alleged (and currently unidentified) trade secrets RFMD claims. Even the process of translating documents written in Chinese to English (and particularly, patents under Chinese law written in Chinese) will be inconvenient and costly.

RFMD asserts inconvenience because documents and computers in RFMD's own possession are in North Carolina. That is insufficient. As a party (indeed, a plaintiff), RFMD will need to take its own materials to the court in which they are needed. RFMD has not suggested that they cannot be easily copied, emailed or otherwise taken to China.

RFMD's further argument about America's and North Carolina's public interests in protecting property rights are counterbalanced by China's public interest in Chinese patents and prohibiting trade secret theft and the other violations asserted in the Chinese Lawsuit. At best for RFMD, the "public" interests balance each other, whereas the "private" inconvenience factors heavily favor dismissing or staying this case.

## V. Identification of Trade Secrets is Required in the Complaint.

RFMD argues that specific identification of its trade secrets is not required in a Complaint as opposed to later in a case since some of the cases cited in the Defendants' opening brief were not about Rule 12 motions. That argument ignores both *Aecom* and *Washburn*, which were decided on Rule 12 motions. *See* Brief at 14. It further runs contrary to the decisions of this Court and another federal district court which apply the requirement of trade secret specificity to Complaints on Rule 12 motions. *See River's Edge Pharms., LLC v. Gorbec Pharm. Servs., Inc.*, 2012 U.S. Dist. LEXIS 57969, *40-41 (M.D.N.C. Apr. 25, 2012) (applying the standard on a Rule 12 motion and finding allegations of a categorical list to suffice because the particular secrets were only known to the defendant and not the plaintiff due to unique contractual circumstances); *ACS Partners, LLC v. Americon Group, Inc.*, 2010 U.S. Dist. LEXIS 19907, *28 (W.D.N.C.

Feb. 12, 2010). The *DSMC* and *IDX* cases cited by RFMD are not controlling as they were decided by district courts outside of this jurisdiction before *Twombly* and *Iqbal*.

**VI.     RFMD Still Has Not Identified the Trade Secret(s)**

Rather than amending to identify the supposed secret(s) in question, RFMD rests on its current allegations. They are insufficient.

Unspecified "<u>technology</u> related to combo bias" does not identify the trade secret. Indeed, RFMD discusses combo bias on its publicly available website. *See* Doc. 35-6 at 7. What is the "technology" related to combo bias? RFMD failure to identify the "technology" related to public information renders the claim implausible.

RFMD next discusses a "business plan." Importantly, RFMD never claims that the entire "'Vanchip' business plan" was a secret. Rather, RFMD alleges that it "incorporated customer and cost information <u>derived from</u> RFMD's confidential, trade secret <u>sales plans</u> for the China region." Compl. ¶ 39 (emphasis added). RFMD fails to say what were the source "sales plans" from which the information in the business plan was "derived" (and thus, not simply copied). The allegations are vague and insufficient.

RFMD next asserts generally that secrets are "incorporated" in the chips produced by the Vanchip entities and "in" the Chinese patent applications. That is akin to saying that there is something secret in a haystack (when much, or all, of the haystack is public information), but without saying where it is, how many secret items are in the stack, or even whether the alleged secrets are "needles in the haystack." RFMD's allegations are not sufficient and should be dismissed, or a more definite statement should be required.

Respectfully submitted, this the 29th day of October, 2012.

/s/ David W. Sar
David W. Sar
N.C. Bar No. 23533
dsar@brookspierce.com

/s/ Joseph A. Ponzi
Joseph A. Ponzi
N.C. Bar No. 36999
jponzi@brookspierce.com

Brooks, Pierce, McLendon Humphrey
 & Leonard, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
(336) 373-8850
*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on this date indicated below, I electronically filed the foregoing document (with exhibits, if any) with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> John F. Morrow, Jr.
> jmorrow@wcsr.com
>
> Laura R. Hall
> laura.hall@allenovery.com
>
> Michael F. Westfal
> michael.westfal@allenovery.com
>
> Paul B. Keller
> paul.keller@allenovery.com
>
> Benjamin Bai
> benjamin.bai@allenovery.com
>
> *Attorneys for Plaintiff*

This the 29th day of October, 2012.

> /s/ Joseph A. Ponzi
> Joseph A. Ponzi
> N.C. Bar No. 36999
> jponzi@brookspierce.com
>
> Brooks, Pierce, McLendon Humphrey
>   & Leonard, L.L.P.
> P.O. Box 26000
> Greensboro, NC 27420
> (336) 373-8850
>
> *Attorney for Defendants*

- 12 -