IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RF MICRO DEVICES, INC.          )
                                )
            Plaintiff,          )
                                )
      v.                        )          1:12CV967
                                )
JIMMY S. XIANG, XIAOHANG DU,    )
FENG WANG, and VANCHIP          )
TECHNOLOGIES, LTD.,             )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Motion for Partial Summary
Judgment as to Jimmy S. Xiang filed by Plaintiff RF Micro
Devices, Inc. ("Plaintiff"). (Doc. 194.) Defendant Jimmy S.
Xiang ("Defendant") has responded, (Doc. 201), and Plaintiff has
replied. (Doc. 205.) This issue is now ripe for resolution, and
for the reasons stated herein, Plaintiff's motion will be
granted in part and denied in part.

## I.   BACKGROUND

Plaintiff initiated this suit in 2012, alleging copyright
infringement, misappropriation of trade secrets, unfair and
deceptive trade practices, and breach of contract against
Defendant Xiang, as well as claims against other co-defendants.
(Complaint ("Compl.") (Doc. 1) at 24-30.)  Specifically,

Plaintiff alleges that Defendant stole its proprietary trade secrets for the benefit of an entity called Vivatronic Technologies, a company located in China that was created by co-defendants Feng Wang and Xiaohang Du to compete with Plaintiff in the semiconductor market. (See Pl.'s Br. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Br.") (Doc. 195) at 1.) This case proceeded until July 17, 2014, when the United States moved to intervene and stay discovery until the conclusion of a criminal case (1:14CR160-1) against Defendant Xiang. (Doc. 121.) On April 29, 2014, Defendant Xiang was indicted by the grand jury through a sealed indictment. Upon Defendant's arrest on June 24, 2014, the indictment was unsealed. (See Criminal Case No. 1:14CR160-1 (Doc. 1); Minute Entry 06/24/2014.) On March 20, 2015, Defendant pled guilty pursuant to a written plea agreement to Count Four of a superseding indictment, a violation of 18 U.S.C. § 1832(a)(2), misappropriation of trade secrets. (Id. (Doc. 94).) The factual basis for that guilty plea states in relevant part that:

> On or about February 14, 2010, the defendant knowingly and without authorization transmitted, from his personal Yahoo! email account to Du, Wang, and Sun, a confidential and proprietary document belonging to RFMD [RF Micro Devices] that contained trade secret assembly and parts cost information derived from RFMD's internal and proprietary cost modeling tool for the product RF3196. The cost modeling tool was

- 2 -

maintained in RFMD's Greensboro, North Carolina
office. The document bore the legends "Confidential"
and "Controlled Copy." The defendant agrees that the
assembly and parts cost information contained within
this document was trade secret information as defined
by Title 18, United States Code, Section 1839, and
that this information was related to a product or
service that was used in or intended for use in
interstate or foreign commerce.

(Id. (Doc. 93) at 2.)

Plaintiff contends that Defendant is bound to this
admission by the doctrine of collateral estoppel, and that by
virtue of the facts established by the guilty plea, summary
judgment should be entered in their favor on several of their
causes of action.

## II.   LEGAL STANDARD

Summary judgment is appropriate where an examination of the
pleadings, affidavits, and other proper discovery materials
before the court demonstrates that no genuine issue of material
fact exists, thus entitling the moving party to judgment as a
matter of law.   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,
477 U.S. 317, 322–23 (1986).   The moving party bears the burden
of initially demonstrating the absence of a genuine issue of
material fact.   Celotex, 477 U.S. at 323.

If the moving party has met that burden, then the nonmoving
party must persuade the court that a genuine issue remains for

- 3 -

trial.  However, this requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts," the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations omitted) (quoting Fed. R. Civ. P. 56(e)). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible in evidence" and that any affidavits or evidence used to support or oppose a motion are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  See Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. Anderson, 477 U.S. at 255. However, there must be more than a factual dispute, the fact in question must be material, and the dispute must be

- 4 -

genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477 U.S. at 248. A
dispute is only "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
<u>Anderson</u>, 477 U.S. at 248.

### III. <u>ANALYSIS</u>

In addressing Plaintiff's motion, this court must first
determine the preliminary issue of whether collateral estoppel
should be applied to prevent Defendant from contesting certain
facts in this case that were the basis for the guilty plea in
his criminal case. The doctrine of collateral estoppel can be
applied to "issues litigated in a criminal case which a party
seeks to relitigate in a subsequent civil proceeding. In some
instances, the criminal conviction may be a plea agreement: a
defendant is precluded from retrying issues necessary to his
plea agreement in a later civil suit." <u>United States v. Wight</u>,
839 F.2d 193, 196 (4th Cir. 1987) (citation omitted). Because
Plaintiff was not party to the prior criminal suit, if
collateral estoppel is to apply, it will be through the doctrine
of non-mutual offensive collateral estoppel. <u>Parklane Hosiery
Co. v. Shore</u>, 439 U.S. 322, 329 (1979). In determining whether
the use of such estoppel should be permitted, courts in the
Fourth Circuit consider several factors, including: (1) whether

the plaintiff could have joined in the earlier action, (2) whether the defendant had an incentive to fully and vigorously defend the earlier action; (3) whether the defendant had won litigation other than the earlier action that determined the same issues or facts favorably to the defendant; (4) whether procedural opportunities are available in the current action that were not available in the earlier action.  Westmoreland Coal Co. v. Sharpe ex rel. Sharpe, 692 F.3d 317, 331 (4th Cir. 2012), cert. denied, ____ U.S. ____, 133 S. Ct. 2852 (2013).

Defendant does not contest that the doctrine should apply in this case. Turning in this case to the factors that courts consider, here: (1) Plaintiff could not have joined in the criminal case against Defendant; (2) given the criminal liability at issue, Defendant had every incentive to fully and vigorously defend the criminal action; (3) Defendant has not won any other litigation deciding these facts or issues in his favor; and (4) there are no procedural opportunities in this case that were not available in the criminal case. Further, the concerns that typically cause district courts to deny the use of non-mutual offensive collateral estoppel are not present in this case. For example, because Plaintiff initiated this suit before the unsealing of the indictment, there is no concern that

- 6 -

judicial economy will be harmed by a "wait and see" attitude from Plaintiff. <u>Parklane</u>, 439 U.S. at 330. Nor will any unfairness result from a situation where Defendant had little incentive to vigorously defend an issue due to nominal or minor damages, or an unforeseeable future suit on the same issues. Defendant had already been sued, and faced criminal liability as an incentive to vigorously defend his case. <u>Id.</u>

This court finds that collateral estoppel should be applied. Although the parties describe the facts that are established by Defendant's guilty plea slightly differently, their descriptions of the facts appear consistent, and there is no dispute, as to the following facts:

1. On or about February 14, 2010, Defendant knowingly and without authorization transmitted from his personal email account a document that contained assembly and parts cost information that was derived from Plaintiff's cost modeling tool for product RF3196 ("Document Two").

2. This document was marked proprietary and confidential, and the assembly and parts cost information for the product contained within Document Two was a trade secret as defined by 18 U.S.C. § 1839.

- 7 -

3.    The trade secret at issue was related to a product that was used in or intended for use in interstate or foreign commerce.

4.    A substantial part of the scheme at issue was committed from outside of the United States, namely, in China.

5.    Defendant transmitted this information with the intent of converting it to the economic benefit of someone other than Plaintiff, and Defendant intended and knew that this conversion would injure Plaintiff. (<u>See</u> Criminal Case No. 1:14CR160-1 (Doc. 93) at 2-3; Pl.'s Br. (Doc. 195) at 8; Def.'s Br. in Resp. to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp.") (Doc. 201) at 3-4.)

With Defendant estopped from denying the above facts, the question now becomes whether Plaintiff is entitled to summary judgment on four of its causes of action, which it contends are established conclusively by the above facts. (<u>See</u> Pl.'s Br. (Doc. 195).)

### 1.    **Plaintiff is not Entitled to Summary Judgment on its Misappropriation of Trade Secrets Claim**

 While Defendant pled guilty in his criminal case to misappropriation of trade secrets under the federal statute, 18 U.S.C. § 1832, Plaintiff brings its cause of action under N.C. Gen. Stat. § 66-153. To establish liability for misappropriation

of trade secrets under North Carolina law, Plaintiff must show that Defendant: (1) knew or should have known of the trade secret; and (2) had a specific opportunity to acquire it for disclosure or use, or has acquired, disclosed, or used it without the express or implied consent or authority of Plaintiff. <u>Combs & Assocs., Inc. v. Kennedy</u>, 147 N.C. App. 362, 369 (2001).

The thrust of Plaintiff's argument is that because Defendant is collaterally estopped from denying every element of the state cause of action by virtue of his guilty plea, he has admitted to violating the North Carolina statute. While the statutes are indeed very similar, they contain different definitions of the term "trade secret," which complicates the matter for collateral estoppel purposes.

Under federal law, a trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, <u>the public</u>." 18 U.S.C. § 1839(3)(B)(emphasis added).[1]

---

[1] Note: 18 U.S.C. § 1839(3)(B) was amended on May 11, 2016, by striking the phrase "the public" and inserting "another person who can obtain economic value from the disclosure or use of the information." <u>See</u> Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376. Because the actions at issue in this case took place before the amendment's effective date, this change is merely noted for clarity.

- 9 -

In contrast, under North Carolina law, a trade secret "derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use." N.C. Gen. Stat. § 66-152(3)(a)(emphasis added). The wording of the North Carolina law not only seems to limit itself to a narrower group of persons as opposed to "the public" but also requires commercial value, in addition to economic value.

Defendant agrees that his guilty plea establishes that the information contained in Document Two derives value from not being generally known to, and not readily ascertainable through proper means by the public, as found in 18 U.S.C. § 1839, but contends that that fact is not sufficient on its own to prove a violation of the state statute. Rather, Defendant argues that the bar for what qualifies as a trade secret is higher under North Carolina law, and as such, his guilty plea cannot by itself establish liability under N.C. Gen. Stat. § 66-152. (See Def's Resp. (Doc. 201) at 8-9.) Plaintiff responds that, because "persons who can obtain economic value" from the disclosure or use of a trade secret are part of the general public, that Defendant by definition included them in his guilty plea.

- 10 -

Non-mutual offensive collateral estoppel is a tool that poses a significant risk of infringing upon Defendant's rights, and should only be used in very narrow circumstances. See In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 327 (4th Cir. 2004) ("The caution that is required in application of offensive collateral estoppel counsels that the criteria for foreclosing a defendant from relitigating an issue or fact be applied strictly."); see also Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co., 744 F.2d 118, 124 (D.C. Cir. 1984) ("The doctrine [of offensive collateral estoppel] is detailed, difficult, and potentially dangerous."). Given these risks, a court should preclude an issue from litigation under the doctrine only when that issue is identical to an issue previously decided. Microsoft, 355 F.3d at 326.

That is simply not the case here. While Plaintiff makes a somewhat logically compelling argument, Defendant pled guilty to a broader statute than the one Plaintiff has brought suit under, and the issue of whether or not the trade secret at issue derived its value from being secret from those who could obtain economic value from it was simply not "critical and necessary" to a guilty plea regarding whether a trade secret obtained economic value by virtue of its secrecy from "the public" at

large. Id.  Here, the court finds that the strict construction

necessary to establish collateral estoppel precludes its use as

to this issue. Defendant's guilty plea standing alone is simply

not enough to persuade this court to grant summary judgment

against Defendant on a different cause of action. As Plaintiff

has submitted no other persuasive evidence in support of its

motion, and this court must take all inferences in favor of

Defendant, Plaintiff's motion for summary judgment on this count

must be denied.[2]

### 2. Plaintiff is Entitled to Summary Judgment on its Claim for Unfair and Deceptive Trade Practices

Plaintiff has likewise moved for summary judgment on its

claim for unfair and deceptive trade practices under N.C. Gen.

Stat. § 75-1.1.  In order to state a claim for unfair and

---

[2] This court understands Plaintiff's documented difficulties in obtaining discovery in this case, caused both by Defendant Xiang, Du and Wang's use of the Fifth Amendment, and Defendant Du and Wang's refusal to return from China. This court is permitted to draw an adverse inference from Defendants' use of the Fifth Amendment in a civil case. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a Civil cause." (internal citations and quotations omitted)).  However, the summary judgment standard is high, and the adverse inferences that can be drawn here do not suffice, by themselves, to meet that standard.

deceptive trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice; (2) the act in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." Ace Chem. Corp. v. DSI Transps., Inc., 115 N.C. App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). Whether a particular commercial act or practice constitutes an unfair or deceptive trade practice is a question of law. Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Plaintiff's instant motion relies on its claim for misappropriation of trade secrets under N.C. Gen. Stat. § 66-152, in that under North Carolina law, misappropriating a trade secret under N.C. Gen. Stat. 66-152 is an unfair and deceptive trade practice.

As noted above, Plaintiff relies entirely on the collateral estoppel effect of Defendant's guilty plea to establish liability under the North Carolina trade secrets statute, but

that guilty plea alone is not enough for summary judgment on that claim.

However, this court finds that Defendant's guilty plea <u>does</u> satisfy every element of a claim for unfair and deceptive trade practices under North Carolina law. Two of the three elements of the claim are explicitly satisfied by virtue of Defendant's guilty plea: that the act in question was in or affecting commerce, and that the act proximately caused injury to the Plaintiff. Defendant is estopped from contesting that the act at issue was in or affecting commerce by virtue of his guilty plea, (<u>see</u> Criminal Case No. 1:14CR160-1 (Doc. 93) at 2-3), and this court finds that Defendant's admitted actions clearly harmed Plaintiff, as evidenced by both the plea as well as the restitution ordered in the criminal case reflecting the value of the information that Defendant misappropriated. (<u>See</u> Pl.'s Br. (Doc. 195) at 4.)

Plaintiff's claim thus turns on whether the first element of the claim, that Defendant committed an unfair or deceptive act or practice, has been met. While it is true that courts in North Carolina have held that a violation of the North Carolina Trade Secrets Protection Act constitutes an unfair or deceptive act under N.C. Gen. Stat. § 75-1.1, <u>see, e.g.</u>, <u>Med. Staffing</u>

- 14 -

Network, Inc. v. Ridgway, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009), as explained above, summary judgment will not be granted in Plaintiff's favor on that claim due to the differences between the state statute and federal statute that Defendant pled guilty to violating.  As such, Plaintiff's reliance on the state statute does not suffice, because a violation has not yet been proven.

However, the question remains whether the facts that have been established by Defendant's guilty plea constitute an unfair or deceptive act independent of North Carolina's Trade Secrets Protection Act.[3] This court finds that they do. "[T]he proper test under Section 75-1.1 is . . . whether the allegedly unfair practice 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious

---

[3] While the North Carolina Legislature has enumerated specific acts that constitute unfair or deceptive trade practices, see N.C. Gen. Stat. § 66-146, what constitutes an unfair and deceptive trade practice is not limited to the actions specifically enumerated. See Drouillard v. Keister Williams Newspaper Servs., Inc., 108 N.C. App. 169, 172-73, 423 S.E.2d 324, 326 (1992)("[T]he fact that the Trade Secrets Protection Act was not one of the regulatory statutes specifically listed in Chapter 66 as violative of N.C. Gen. Stat. § 75-1.1 is immaterial. This Court has repeatedly held that the violation of regulatory statutes which govern business activities may also be a violation of N.C. Gen. Stat. § 75-1.1 whether or not such activities are listed specifically in the regulatory act as a violation of N.C. Gen. Stat. § 75-1.1.").

- 15 -

to consumers." <u>Dealers Supply Co., Inc. v. Cheil Indus., Inc.</u>, 348 F. Supp. 2d 579, 592 (M.D.N.C 2004). Here, Defendant was employed by Plaintiff, signed a contract prohibiting the transmission of confidential information, and then used his status as an employee to steal proprietary and confidential information that derived value from its secret status for the benefit of a would-be competitor of his employer. Those actions were clearly immoral and unethical, and violated public policy by virtue of the fact that they constituted a federal criminal act. As such, they were an unfair or deceptive act for purposes of the statute.

The factual basis of Defendant's guilty plea establishes sufficient facts to meet each element of an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1, and Plaintiff is entitled to summary judgment on that claim as to Defendant's transmission of Document Two.

### 3. <u>Plaintiff is Entitled to Summary Judgment on its Claim for Breach of Contract</u>

Plaintiff has also moved for summary judgment for breach of the employment contract it entered into with Defendant. Defendant does not contest that summary judgment should be entered on this claim regarding his transmission of Document Two, but as noted <u>supra</u>, contends that any judgment entered

– 16 –

should be limited to that act alone. (See Def.'s Resp. (Doc.
201) at 1.) The elements for a breach of contract are (1) the
existence of a valid contract; and (2) breach of the contract's
terms. See Martinez v. Univ. of N.C., 223 N.C. App. 428, 432,
741 S.E.2d 330, 332 (2012).

Here, there is a valid contract at issue. Upon obtaining
employment with Plaintiff, Defendant admits that he signed a
contract entitled "Confidentiality and Nonsolicitation
Agreement." (See Answer (Doc. 59) ¶ 25.) Plaintiff has attached
a copy of that contract to this motion. (See Declaration of
David R. Boaz, Ex. A, Inventions, Confidentiality, and
Nonsolicitation Agreement (Doc. 196-1).) That contract obliged
Defendant to, among other things, "keep in the strictest
confidence and trust all Proprietary Information, and . . . not
use any Proprietary Information or disclose any Proprietary
Information to any person without the prior express written
consent of [RFMD]." (Id. at ¶ 1(a).) Proprietary Information is
defined in the contract as "information used in the design,
development, manufacture or assembly of [RFMD's] products or
which would be useful to anyone competing or proposing to
compete with [RFMD] including, but not limited to, . . . raw
material specifications and lists, product specifications, . . .

- 17 -

product prices, . . . and other information owned by [RFMD] which is not public information." (Id.)

Defendant does not deny, and this court finds, that the information contained in Document Two, which Defendant has pled guilty to misappropriating, falls squarely within this definition. As such, Defendant breached his contract with Plaintiff when he transmitted Document Two to individuals in China for the purpose of converting that information for the economic benefit of someone other than RFMD, as detailed in the factual basis for his guilty plea. Summary judgment will be granted on this claim in Plaintiff's favor as to Defendant's transmission of that document.

### 4. **Plaintiff's Motion for Summary Judgment for Conversion is Premature**

Finally, Plaintiff contends that summary judgment should be entered against Defendant as to the tort of conversion. However, while Plaintiff asserts a claim for conversion against Defendants Du and Wang, there is no claim against Defendant for conversion in the Complaint. Where no direct allegations are made in the pleadings, those claims cannot be raised on summary judgment and are properly ignored by the court. Free v. Bland, 369 U.S. 663, 671 (1962) ("On the record before us, no issue of fraud was or could properly have been decided by the court below

- 18 -

on summary judgment. There was no direct allegation of fraud in the counterclaim."); see also Taha v. Engstrand, 987 F.2d 505, 507 (8th Cir. 1993) (holding that because plaintiffs did not raise several claims in the complaint, "the district court was justified in ignoring them"); Munoz v. W. Res., Inc., 225 F. Supp. 2d 1265, 1271 (D. Kan. 2002) (refusing to consider information that was not raised in either the complaint or the pre-trial order); Pfister v. Bryan Mem'l Hosp., 874 F. Supp. 993, 998 n.5 (D. Neb. 1995) ("As this issue was not raised in the pleadings or preserved in the pretrial order, and is beyond the scope of the specific issue [alleged in the complaint], I do not address it.").

Here, no claim currently exists against Defendant for conversion, and this court will not address a non-existent claim. Plaintiff is, of course, correct that it may amend its complaint to add such a claim, but has chosen to put the cart before the horse and move for summary judgment before doing so. Bringing such a motion, regardless of its merit, creates confusion in the docket and wastes the time and resources of both this court and Defendant. If Plaintiff wishes to amend its Complaint to add a conversion claim against Defendant, it should do so, and this court will rule on it when appropriate.

**5. Summary Judgment is Limited to Defendant's Actions Regarding Document Two**

As a final matter, this court notes that Plaintiff relies entirely on the collateral estoppel effect of Defendant's guilty plea as the basis for its motion. As such, this court's grant of summary judgment in Plaintiff's favor on its claims for unfair and deceptive trade practices and breach of contract are limited to the scope of that guilty plea, and thus to Defendant's actions regarding Document Two only. Any claims related to information or documents other than Document Two remain outstanding.

**IV. CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 194) is **GRANTED IN PART AND DENIED in PART** and that Summary Judgment will be entered against Defendant Jimmy S. Xiang as to Plaintiff's causes of action for Breach of Contract and Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1, as they relate to Defendant's actions involving Document Two as set out in Defendant Xiang's guilty plea in the parallel criminal case. Plaintiff's Motion for Partial Summary Judgment is otherwise **DENIED.**

This the 14th day of July, 2016.

                                             United States District Judge